## ROBERT H. WRIGHT *vs.* BENJAMIN CARTER.

1. An act of the legislature authorizing a turnpike company to build a turnpike on a public highway, after getting such highway vacated according to law, and providing that the company should pay to all owners of land over which the road passes all damages sustained by the construction of such turnpike road, also for all damages done to adjoining lands, and all materials taken therefrom, but providing no compensation for the value of the soil occupied by the road, is constitutional.

2. By the transfer of the road from the public to a corporation the title to the soil is not changed, but remains in the owners of the adjoining land, and they have the same use and enjoyment of it as they had before;

Wright v. Carter.

the easement or right of way is transferred to the company, to be held by them while they work the road and keep it in repair, subject to the right of the public to use the road upon paying the tolls established by law.

3. Where an act authorizes a turnpike to be built along a public highway, upon such highway being vacated according to law, if the surveyors of the highways vacate the same, and in their return set forth that such vacation is necessary for the purpose of carrying into effect the act authorizing the turnpike to be built, it is a vacation of the highway according to the spirit of the act.

4. Where an act requires a highway to be vacated for the purpose of, and before building a turnpike upon it, the land is not discharged from the easement, it being, by the same act, vacated in one form, and imposed in another.

5. Ejectment will lie by the owner of the soil for a part of a highway illegally appropriated by a third party to his own use.

6. The power to erect gates and demand and receive tolls on a turnpike road embraces the power to erect toll-houses for the convenience of the gate-keepers, but the company must so exercise that right as not to occasion unnecessary injury to the adjoining landholders.

7. Grants of corporate powers are to be strictly construed, yet they are not to be so construed as to defeat the object of the grant.

An action of ejectment was brought in the Mercer Circuit Court, by Robert H. Wright against Benjamin Carter. When the case was called for trial, at the January Term, 1857, the attorneys of the respective parties agreed upon the following state of the case to be submitted to this court.

The plaintiff, Robert H. Wright, is the owner of lands through which the public road, known as the White-horse road, was originally located and opened for public use, including about sixty acres on the north side of said road, along and through which the said White-horse road ran on the seventeenth day of March, eighteen hundred and fifty-four, when the act entitled "An act to incorporate the Crosswicks and Trenton Turnpike Company" was approved, and along which public road the turnpike road of said company was constructed; that after the said company was organized, application was made to the Court of Common Pleas of Mercer county for the appointment of surveyors of the highways to vacate the said public

VOL. III.                    E

road, according to law and as required by the charter of incorporation of said company; that the said public road was afterwards vacated, and thereupon the said company constructed a turnpike road along said public road, according to the provisions of the said act, and in accordance with the provisions of the seventh section of the act incorporating the said company; that the said turnpike road was constructed at least thirty-two feet in breadth along or near the middle of the said public road; that in grading, arching, and draining the said public road in the construction of the said turnpike road, the said company used the whole width of the said old road, within the limits thereof, on each side to the fences of the adjacent land-owners, as near as the same could be done without prejudice to the said land-owners; that after the said company had completed the said turnpike road, they erected a toll-gate on the same, and a house for their gate keeper within the limits of the said old public road in front of the enclosed lands of the plaintiff, and where the said old road passes over his lands; that the said house, so erected, stands principally between that part of the said old public road, which was bedded and faced with gravel by the said company, and the line of the northerly side of the said old road extending to said northerly line.

When the said company was about erecting the said toll-house, the plaintiff caused to be served on the president, or other proper officer of said company, a notice requiring the said company to desist from erecting the said toll-house.

After the said toll-house was erected, to wit, on the tenth day of July, eighteen hundred and fifty-five, this action was commenced by summons against Benjamin Carter, the defendant, he being the tenant of the said company and in possession of the said toll-house, as the toll-gatherer of said company, to recover possession of a lot of land lying between the northerly line of said old public road, and extending to within sixteen feet of the

centre line of said old public road, a part of said toll-house standing on said lot.

Argued at November Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS and HAINES.

*W. Halsted*, for plaintiff.

*I. W. Lanning*, for defendants.

The CHIEF JUSTICE.   By an act of the legislature, the Crosswicks and Trenton Turnpike Company were authorized, by their charter, to construct a turnpike along a public highway, known as the White-horse road.   The act required that the turnpike road should be constructed at least thirty-two feet in breadth along the middle, as near as may be, of said White-horse road.   The act also provided that the turnpike company should not construct their turnpike along said highway until the same should be vacated as a public highway according to law.   The public highway was vacated and the turnpike road was built, as directed by the statute.   The defendants also erected within the limits of the ancient highway a toll-house, which is occupied by the defendant as the gate-keeper and toll-gatherer of said company.   The toll-house stands in front of the enclosed lands of the plaintiff, and where the ancient highway passes over his lands.   The action is brought to recover a strip of land lying between that part of the old highway which was converted into a turnpike road by being bedded and faced with gravel and the line of the northerly side of said highway upon which the toll-house stands.

It is objected that the act is unconstitutional, because it authorizes a turnpike road to be constructed over the lands of the plaintiff without providing a compensation for the lands so taken and occupied.   The act provides that compensation shall be made for all damages which

the owners of the land over which the road passes sustain by reason of the construction of the road, and also for all damages done to adjoining lands, and all materials taken therefrom. But it provides no compensation for the value of the soil occupied by the road. The title of the soil is not changed—it remains, as it was before, in the owner of the adjoining soil. He has precisely the same right to and control over the soil that he had before the passage of the act. The land was subject to the easement or right of way before the passage of the act, and continues subject to the same burthen still. The right of altering the construction and grade of the road was in the public, and might have been exercised by them to the damage of the landholder, without his being entitled to any redress for the injury thus sustained. That right is, by the act, vested in the turnpike company; but with this difference, that they are required to make compensation to the land-owner for all damages sustained by him by reason of the construction of the turnpike road.

It cannot be said, therefore, that the property of the plaintiff was, by virtue of the act, taken for public use without just compensation—nothing was in fact taken from the plaintiff; as before the passage of the act, so after, the title to the soil remained in the plaintiff, the right of way in the public. All that the legislature granted to the turnpike company was the easement or use of the ancient highway for the purposes of their road. The franchise of taking toll in nowise affected the property of the plaintiff.

That the legislature possesses the power to permit a turnpike corporation to occupy a public highway for their road, is not questioned. The power has been frequently exercised in this state and elsewhere, and has been sustained by judicial decision. *State* v. *Hampton,* 2 *New Hamp.* 22.

The force of the argument on the part of the plaintiff rests on the suggestion that the act has authorized a cor-

poration, for their own gain and profit, to construct a way over the plaintiff's lands, and thereby deprive the plaintiff of the occupancy and enjoyment of the land without compensation. But the plaintiff has the same use and enjoyment of the land now that he had before the passage of the act. The right of way was already in the public; and if any one is to be compensated for that right by the company, it is the public, not the land-owner. And this principle is adopted by the law of the State of New York, which prohibits turnpike and plank road companies from taking possession of any public highway until the value of the public interest in the road is appraised and paid for as public property to the commissioners of highways, to be applied to the improvement of the roads in their respective towns. 1 *Rev. St.* 715, *ch.* 18, *art.* 2, § 29.

The act does not authorize a change in the use of the road; it remains a public highway as before. Every traveler has the same right to use it as he has to use any other highway on paying the tolls established by law. *Commonwealth* v. *Wilkinson*, 16 *Pick.* 179; *Benedict* v. *Goit*, 3 *Barb.* 459.

The act has merely introduced a change in the mode of making and keeping the road in repair, authorizing individuals to do the work, and to reimburse themselves by taking tolls. In case they fail to keep the work in repair, the duty is devolved by law upon the overseers of the highways. *Nix. Dig.* 714, § 76.

The case is not affected by the decision in *Starr* v. *The Camden and Atlantic Railroad Co.*, 4 *Zab.* 592. That case simply decides that a railroad cannot be constructed across a public highway without making compensation for the injury thereby occasioned to the owner of the soil, when the act itself is silent upon the subject.

A serious difficulty in giving construction to the act arises from the sixteenth section, by which it is enacted that the company shall not construct their turnpike along said highway, until the same shall be vacated as a public

highway according to law. The case shows that proceedings were taken to vacate the highway agreeably to law, and that the road was vacated. The surveyors, by their return, adjudged the vacating of said road to be necessary for the purpose of carrying into effect the provisions of the act entitled, " An act to incorporate the Crosswicks and Trenton Turnpike Company ;" and they do accordingly vacate such part of said road as appears to be necessary for the purpose aforesaid. It is obvious that the legislature never could have contemplated that the surveyors should vacate the ancient highway because they adjudged it to be unnecessary as a highway. The act itself, by authorizing a turnpike to be constructed upon the highway, manifests that it is an important line of travel and necessary to the public convenience. The legislature, in requiring the road to be vacated, had in view a two-fold object, viz., 1, to prevent the conversion of the ancient road into a turnpike, unless with the concurrence of the authorities of the township in which the road is situate; 2, to prevent any doubt as to the discharge of the township from all obligation to repair the road, or liability for want of repair. The mode, therefore, in which the road is vacated is in accordance with the spirit of the act.

But it is further insisted that, upon the road being vacated as a public highway, the land was discharged of the easement, and the title of the soil remained in the owner clear of the right of way, and it was not in the power of the legislature to restore that burthen, and thereby deprive the plaintiff of his property without compensation. But it is obvious that the design of the legislature in having the road vacated as a public highway was not to discharge the land from the easement, but simply to transfer the duty of maintaining and repairing the road from the public to the corporation. When the legislature passed the act authorizing the turnpike to be constructed over the plaintiff's land, it was clearly subject to the easement of the highway. When the act passed, the easement existed. The

right of way was in the public. That it was subsequently, by virtue of the act, so far modified as to shift the burthen of maintaining and repairing the road from the public to the corporation, cannot affect the validity. The land was never discharged from the easement, for the same act which author-ized it to be vacated in one form, and before it was so va-cated, imposed it in another.

But if the occupation of the highway by the turnpike company for the purposes of a road is lawful, it is insisted that the construction of a toll-house in the highway is un-authorized and illegal. It is admitted that ejectment will lie by the owner of the soil for a part of a highway illegally ap-propriated by a third party to his own use. So the law is settled.

The act does not in terms authorize the erection of a toll-house. It declares that it shall be lawful for the company to erect gates or turnpikes across the road, and to demand and receive toll. Is not the right to erect a toll-house the result of fair, if not necessary implication? The gate is to be opened to permit the free passage of travelers at all seasons, by night and by day. Is a shelter for the keeper not essential for the maintenance of the gate? It is said that the company must purchase land adjoining the road for the erection of a toll-house. But the act gives the company no power to acquire land for such pur-pose by compulsion, and *non constat*, that the land-owner would be willing to sell. The right of the company to maintain the gate cannot depend upon the willingness of the land-owner to part with his land. It would seem that the right to erect a gate, though usually granted in express terms, would result from the grant of the right to take tolls. In the charter of the Trenton and New Brunswick Turnpike Company, November 14th, 1804, (*Pam. L.* 382) no authority is given to erect gates. The act simply confers the power of taking tolls, and prohibits the erection of a gate upon such part of the road as was previously a public highway.

It is objected that the toll-house is an obstruction of the highway. But the act clearly contemplates that the road should be obstructed or closed at the point where the gate or turnpike is erected. The gate never extends the whole width of the road. The residue of the space not occupied by the gate always is, and of necessity must be closed, either by a fence or by the toll-house.

It is objected further, that the company may erect their toll-house in front of a private dwelling. The same objection would lie if the erection of the toll-house was expressly authorized by the act. In either case the company must so exercise its powers as not to occasion unnecessary injury to the landholder. It is obvious that the convenience of the traveler, no less than that of the gate-keeper, is consulted by placing the gate in the centre of the road, and the toll-house as near the gate as may be. Such is believed to be the most usual, if not universal arrangement for collecting toll; and the legislature, in authorizing the taking of toll, must be deemed to have intended to authorize its collection in the mode in common use.

POTTS, J. Carter is the tenant in possession of a toll-house, erected by the Crosswicks and Trenton Turnpike Company. The toll-house is situated within the limits of what was the old White-horse road, which has been lately converted into a turnpike, and the fee of the land is conceded by the state of the case to be in the plaintiff.

The plaintiff contends, in the first place, that the turnpike company have not the legal right to the possession of the land on which the toll-house is erected—1, because the old road has never been legally vacated; 2, if it has been, yet that the act, so far as it authorizes the company to erect their turnpike on it, is unconstitutional and void, on the ground that it provides no compensation for the value of the land.

There is nothing in either of these objections. The

16th section of the charter of the company does, indeed, direct that said company shall not construct said turnpike along said highway, until the same shall be vacated as a public highway *according to law.* The road act empowers surveyors, appointed for the purpose, to vacate a public highway, "if they shall think it necessary." *Nix. Dig.* 702, § 5. In this case the surveyors return that they "do think and adjudge the vacating of said road, &c., necessary for the carrying into effect the provisions of the act to incorporate the Crosswicks and Trenton Turnpike Company." This is an execution of the power to vacate within the spirit of the acts of the legislature. It was manifestly the intention of the legislature that the old road should be vacated, for the purpose of constructing a turnpike upon it—not that the turnpike should take the old road only in the event that the surveyors should be of opinion that said road was unnecessary and useless to the public. Such a construction would clearly defeat the objects of the act of incorporation. And as to the second objection, provision is made to compensate the landholders for the damages they may have sustained by the construction of the turnpike, though not for the fee of the land, for that is not given to the company.

Then it is contended, in the third place, that inasmuch as the act of incorporation does not by express words give the company the right to erect toll-houses, that they cannot legally erect such houses within the line of the old road, now occupied by the pike. But I take it that this power is embraced in the general authority to erect gates, and demand and receive toll. Though grants of corporate powers are to be strictly construed, yet they are not to be so construed as to defeat the object of the grant; and hence all such powers, in addition to those expressly granted, as are strictly incidental and necessary to that object, are implied. It has been held that power to construct a railroad, and establish transportation lines upon it, necessarily includes the essential appendages required

to complete and maintain such a work, and carry on such a business, as the power to erect and maintain suitable depots, car-houses, water tanks, shops for repairing engines, &c., houses for switch and bridge tenders, &c., (*State* v. *Mansfield*, 3 *Zab.* 513;) and a toll-house is as necessary an appendage of a turnpike company, and is within the same principle.

I am of opinion that the defendant is entitled to judgment.

Justices ELMER and HAINES concurred.

SEE *Wright* v. *Carter*, 3 *Dutch.* 685, *index note ; McKelway* v. *Seymour*, 5 *Dutch.* 332 ; *State* v. *City of New Brunswick*, 3 *Vr.* 551 ; *State* v. *Laverack*, 5 *Vr.* 207, 208 ; *Freeholders of Monmouth Co.* v. *Red Bank and Holmdel Turnpike Co.*, 3 *C. E. Gr.* 93 ; *J. C. & B. R. R. Co.* v. *J. C. & H. H. R. R. Co.*, 5 *C. E. Gr.* 71 ; *Wuesthoff* v. *Seymour & Wheelock*, 7 *C. E. Gr.* 70 ; *Black* v. *Del. and Rar. Can. Co.*, 7 *C. E. Gr.* 401 ; *Chambersburgh* v. *Manko*, 10 *Vr.* 499.