CHARLES J. CHANDLESS, PLAINTIFF IN ERROR, v. THE STATE, EX REL. BENJAMIN DAY, DEFENDANT IN ERROR.

1. Under the Ballot Reform law (*Pamph. L.* 1890, *p.* 361), which requires the voter to enclose his ballot in an envelope and provides that if, in counting the votes, more than one ballot shall be found in any envelope, none of the ballots in that envelope shall be counted for any candidate, it makes no difference that all the ballots enclosed in the envelope show only one vote for each office named.
2. Under that law, the prohibition against counting such ballots is binding upon the courts as well as on the election officers.

---

In error to the Hudson Circuit.

For the plaintiff in error, *Allan L. McDermott.*

For the defendant in error, *George J. McEwan.*

The opinion of the court was delivered by

DIXON, J. At an election for town officers and a chosen freeholder, held in the town of West Hoboken, Hudson county, on April 11th, 1893, Charles J. Chandless received nine hundred and thirty-three undisputed votes and Benjamin Day received nine hundred and twenty-five undisputed votes for the office of town councilman-at-large. Besides these there were cast thirty-five envelopes, each containing two slips of paper, one headed "Municipal Ticket," the other headed "Regular Republican Nominations," both of which were endorsed by the town clerk as official ballots. On the "Municipal Ticket" appeared only the names of persons designated by the voter to fill town offices, among them that of Benjamin Day for the office of councilman-at-large; on the other slip appeared only the name of a candidate for the county office of chosen freeholder.

If the ballots in these thirty-five envelopes can be counted for Day, he was elected councilman-at-large; if not, Chandless was elected. The canvassing officers declared the latter elected. On *quo warranto* proceedings in the Supreme Court, the trial judge at the Hudson Circuit declared Day elected, and on exception to his decision the question is brought to this court by writ of error.

Both sides concede that the question depends upon section 34 of the supplement to "An act to regulate elections," which was approved May 28th, 1890 (*Pamph. L., p.* 361), and is commonly known as the Ballot Reform law. This section requires each voter to enclose his ballot in an official envelope and provides that "in counting the votes cast at any election the envelopes containing the ballots shall be opened, and * * * if, on opening any envelope, it shall be found to contain more than one ballot, none of the ballots contained therein shall be counted for any candidate, and all such ballots shall be returned to the envelope wherein they were found, and on the face of such envelope shall be written the words 'rejected ballots,' and such envelope and ballots shall be strung on the string of rejected ballots."

It is obvious that if this provision is to be enforced as it is written, these disputed ballots cannot be counted, for in every envelope there were two ballots, *i. e.*, two slips of paper, each expressing an elector's vote, each also officially endorsed as a perfect ballot.

But, it is said, behind the mere words of the enactment we must seek for the purpose of the lawmaker, and must extend or limit the scope of the law so as to effectuate that purpose and that only. This purpose, the relator insists, embraces only those cases where two or more ballots in one envelope express votes for the same office, so that, if they were cast for the same candidate the elector might have a chance for double voting, or if they were cast for different candidates the elector's choice would not be stated.

If, however, the legislative purpose had reached no further than this it would probably have been declared in terms less general than those found in the statute.

There was, I think, another object in view, for the accomplishment of which the tenor of the law is exactly fitted, and that is, to facilitate the counting of the votes. Under other provisions of the act there might be as many official ballots in each envelope as there were offices to be filled, without the same office being named more than once; and the time and labor necessary for counting the ballots, as well as the chances for error, would, under such circumstances, be correspondingly increased. To obviate this the legislature required that each elector should indicate his whole choice on a single ballot, and, to secure observance of this requirement, enacted that if he failed his vote should not be counted for any candidate.

The supposable designs of the legislature, therefore, do not lead us away from the plain meaning of the terms employed.

It is further urged by the relator that, because under the law there may be no official ballot printed which contains the names of all offices to be filled at the election, and yet the elector must use the official ballot, he may be deprived of the constitutional right of voting unless he can use more than one ballot. But such a result is effectually guarded against

by those provisions of the act which authorize the voter to add to the official ballot by writing or by pasters.

Much stress is laid upon the fact that the double ballots now in question were honestly cast, and it is thereupon insisted that, even if the election officers were bound to reject them, yet on *quo warranto* the court should give effect to the voter's choice.

Undoubtedly, where the court is left free to deal with mere irregularities in an election, it will endeavor to ascertain by judicial means the will of the voter and to accord' it due force. But when the legislature declares what the consequence of an irregularity shall be, the court is as much bound to enforce that consequence as it is to carry out any other enactment. If the matter be within the range of legislative power, the legislative will is the law of the court as well as of the citizen. *Water Commissioners* v. *Brewster*, 13 *Vroom* 125; *Wheeler* v. *Almond*, 17 *Id.* 161. If we could find just reason for concluding that this inhibition was directed to the election officers only, the court, of course, would be at liberty to pursue its usual policy. Thus, if an inhibition against counting the votes appeared to be based on some uncertainty, which might be removed by a judicial investigation, there would be. room for the conclusion suggested. But here, the fact on which the interdict rests is a perfectly simple one, to be learned by the election officers at the moment and by mere inspection, with more certainty than could ever afterwards be attained by judicial investigation. When, therefore, the legislature said that, because of such a fact, the ballots should not be counted for any candidate, we see no reason to believe that the prohibition was not meant to be final.

Our conclusion is that it was erroneous to count these thirty-five ballots for the relator, and therefore the judgment of the Supreme Court must be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SMITH—13.