26 N.J. Super. 363 (1953)
97 A.2d 748
IN THE MATTER OF THE APPLICATION OF ELMER H. WENE, TO CONTEST UNDER R.S. 19:29-2 THE NOMINATION OF ROBERT B. MEYNER.
Superior Court of New Jersey, Law Division.
Decided May 29, 1953.
*368 Messrs. Charles A. Stanziale, James T. Kirk, and Francis M. McInerney, attorneys for contestant Elmer H. Wene.
Messrs. Milton B. Conford, Joseph Weintraub, and Gerald T. Foley, attorneys for incumbent Robert B. Meyner.
JOSEPH L. SMITH, J.S.C.
On May 14, 1953 a petition, hereinafter referred to as complaint, in the above entitled cause, was filed pursuant to chapter 29 of Title 19 of the Revised Statutes, dealing with contested elections, with Honorable John B. McGeehan, Judge of the Superior Court, "without prejudice to the rights of any party." This complaint related only to the questions hereinafter considered occurring in Hudson County.
The Honorable Arthur T. Vanderbilt, Chief Justice of the Supreme Court of the State of New Jersey, on May 20, 1953, pursuant to R.S. 19:29-2 (as amended by L. 1953, c. 19, sec. 33), assigned to me the hearing of the said cause and the handling of all matters in connection therewith.
On May 22, 1953 an amended pleading, now referred to as a complaint, was filed, covering the questions presented in both Hudson County and Warren County. The proceedings involve a contest by Elmer H. Wene of the nomination of Robert B. Meyner as candidate for Governor in the primary election of the Democratic Party held April 21, 1953.
On May 22, 1953 an order was made by me setting May 28, 1953 at the court house in Jersey City, as the time and place, the parties having agreed thereto, for the court to hear a motion on the part of the said Robert B. Meyner for summary judgment dismissing the complaint.
On May 26, 1953 the attorneys for the incumbent, Robert B. Meyner, served and filed a notice of motion for summary judgment in favor of the said incumbent, with respect to the whole of the amended complaint, on the ground that the *369 said amended complaint showed that there was no genuine issue as to any material issue of fact, and that the said Robert B. Meyner was entitled to a judgment as matter of law, in that the complaint did not disclose a violation of the statute, and in that the alleged violation, if any, did not affect the legality of the votes cast or the legality of the election. Attached to said notice of motion were supporting affidavits of Philip A. Donnelly and Thomas C. Swick.
This motion for summary judgment aforesaid is now before the court for determination upon briefs and oral argument.
The amended complaint sets forth that the said Elmer H. Wene was a candidate for the Democratic nomination for Governor of the State of New Jersey in the primary election held on April 21, 1953. He concedes that his principal opponent for the said nomination was Robert B. Meyner. The court takes cognizance of the fact that in addition to the foregoing two candidates there were two other candidates in the said primary for the Democratic nomination for Governor, Alexander F. Ormsby, and John J. Winberry.
In Warren County the returns in all of the voting districts, after a recount of the votes at the request of said Elmer H. Wene, gave Robert B. Meyner 7,918 votes, and Elmer H. Wene 358 votes.
The amended complaint further alleges that voters were allowed to vote in the said primary election in Warren County who had not voted for "two subsequent annual primary elections," and that the said persons so allowed to vote had not signed but were legally required to sign a declaration stating the party in whose primary election they desired to vote, as provided in R.S. 19:23-45 (as amended by L. 1952, c. 158);
"A voter who has not voted in a primary election of a political party for two subsequent annual primary elections shall not be permitted to vote in any primary election of a political party until he has first signed and filed with the district board a declaration designating the political party in whose primary election he desires to vote."
*370 Mr. Wene's contention is that all voters who cast their ballot without being required to comply with the aforesaid statute, by their failing to sign the "declaration" aforesaid, be declared to have cast illegal votes, and he sets forth a list of voters' names totaling approximately 3,200 who allegedly voted but without first having signed such a declaration, asserting that these votes should be declared illegal and not counted, which he claims would result in his having received the largest number of votes in the Democratic primary, and thereby entitling him to become the nominee for Governor of the Democratic Party in the coming general election to be held on November 3, 1953.
The recitals in the pleading in reference to Hudson County are the same as in Warren County, except that after a recheck of the votes on a statutory recount in Hudson County it was found the candidates had received the following number of votes:

 Robert M. Meyner ...................... 58,883
 Elmer H. Wene ........................ 28,908
 Alexander F. Ormsby .................. 9,557
 John J. Winberry ..................... 953

There is no allegation as to the exact number of persons who are alleged to have illegally voted on account of their failure to have first signed a declaration in accordance with the provisions of the statute aforesaid. This complaint alleges that Robert B. Meyner was the winner of the said primary contest held on April 21, 1953 as the candidate of the Democratic Party for Governor of New Jersey; that the difference in the vote between Robert B. Meyner and the said Elmer H. Wene throughout the State of New Jersey was 1,506 votes, and that the aforesaid illegal votes in the County of Warren or County of Hudson or both, would be sufficient to entitle the contestant to receive the nomination for Governor of the State of New Jersey. He seeks in his complaint that a hearing be had to determine the exact number of persons so voting in the said primary in Warren County and in Hudson County on April 21, 1953, who had not voted for "two *371 subsequent annual primary elections" and failed to sign a declaration "as required by law."
He further asks this court at said hearing to set aside and declare as illegal all those votes cast in the said primary election held in said counties aforesaid by those persons who had so failed to vote in two subsequent annual primary elections and had failed to sign and file the necessary declarations as required by law. He further seeks to be declared the winner of said primary election by this court. Attached to the said complaint are the names of voters in the several voting districts in Warren County and Hudson County, referred to in the aforesaid complaint.
Now, let us consider the pending motion.
Although the sufficiency of the amended complaint is to be adjudged only on the basis of the legal sufficiency of facts well pleaded therein, we may look to the affidavits for light as to surrounding circumstances, in view of the 1953 primary being the first application of the 1952 amendment of the section involved. The record on this motion shows that in Monmouth and Atlantic Counties, the election officials considered the statute R.S. 19:23-45, as amended by L. 1952, c. 158, as not requiring the signing by any voter in said primary of any separate form of declaration. The requirement for signing a declaration of the political party in which the voter desired to vote was deemed satisfied by the signature which every voter made in the official signature copy register, together with the voter announcing at the same time the party primary he desired to vote in, and by the local election board official writing an abbreviation of the party name alongside said name as required by R.S. 19:23-46 and checking the qualifications of the voters as required by R.S. 19:31A-8. No separate forms of declaration were sent to be used by or returned by any local election board in either Monmouth or Atlantic Counties. Therefore, no voters there signed or filed any such form.
In Bergen County, according to the motion papers, the local boards received forms of declaration but many, if not most, of said local boards did not require voters to sign same, *372 and some of said local boards failed to return any forms of declaration to the county election officials.
Substantially the same procedure was followed in Burlington County, Gloucester County, Morris County, Cumberland County, Salem County, and Ocean County.
There was considerable lack of uniformity in the disposition of the forms after the results of said election were compiled. In Essex County forms of declaration were sent to local election boards but no reference to such forms, or to any requirement for procuring them to be signed, were contained in the comprehensive printed instructions sheet which was sent to each local board by the county board of elections. The Essex County Superintendent of Elections "spot checked" some of those declarations after the election and then destroyed all of them, so that it is now impossible to determine which voters signed or failed to sign them in Essex County.
In Union County the forms were supplied to the local boards and fairly generally used.
Except for the "spot checking" which it is said was made of the declaration forms by the Essex County Superintendent of Elections, none of the other county election boards above referred to, have checked any of the declaration forms to determine whether all of the voters referred to in R.S. 19:23-45 (those who voted in a prior primary and failed to vote in the next two subsequent primary elections) actually signed them. In these said counties, no effort was made to collect all such declarations or to determine whether any local boards had retained any signed forms after the election or had deposited them in ballot boxes rather than return them to the county boards.
The incumbent argues that since the 1952 amendment of R.S. 19:23-45, abolished the previous requirement of an affidavit establishing the party affiliation of voters who failed to vote in the next two subsequent primary elections after a primary election in which they did vote, that the new and present provision of R.S. 19:23-45, requiring that in such case the voter shall sign a declaration "designating the *373 political party in whose primary election he desires to vote" seems to serve no practical purpose, if it is not deemed to be satisfied by the declaration that the voter makes when he announces his party and signs the signature register record, alongside of which the local election board concurrently specifies the name of his party in writing, all being required by R.S. 19:31A-8. His position is that this latter procedure, together with the directions in R.S. 19:23-46 for checking these voters' prior voting record, constitutes a complete and permanent record of the voter's prior primary voting record and a sufficient safeguard against a voter improperly voting in the primary of a party of which he is not a member. An additional signed declaration by the voter, incumbent argues, would add no protection in this regard, particularly since there is no provision under R.S. 19:23-45 prescribing the form that the declaration shall take, nor requiring the election board to preserve any additional "declaration" referred to therein. The "declarations" taken in the April 21, 1953 election in Essex County have already been destroyed by the Essex County Superintendent of Elections.
Indeed, this court wonders if the alleged requirement of such a declaration could not lead to a great many abuses in the conduct of an election by having said declarations signed, not in the presence of the election board, but merely through prior electioneering arrangements, and then by having the voters sign same and merely on appearing to vote, submit such declarations to the board. This might well be done, although it is not contemplated under the aforesaid act. However, there is no prohibition against this practice. In Warren County, the affidavits submitted by incumbent showed forms of declarations were distributed by the Warren County Board of Elections, and they were used by some boards until the supply so furnished by the county board was exhausted. Other local boards in Warren County used such declarations only in the case of voters who had previously voted at some time in a primary election of the other party. "Spot checking" of the permanent voting records in Warren County indicates, however, that signatures were entered by all such *374 voters on the signature comparison registers when voting and that the primary party affiliation for the year 1953 was noted on the permanent voting forms of each such voter. Is not this a compliance with the statute in question? Contestant does not claim that any voter who voted in the Democratic primary in either Warren or Hudson County was disqualified by reason of having voted in a Republican primary in 1951 or 1952 or for any other reason based on party membership.
The contestant contends that the obtaining of a declaration prior to permitting a person to vote in the primary election is not a ministerial act but is a "condition precedent," "of an act that must be done before the voter who has failed to vote in two subsequent annual primary elections shall be allowed or permitted to vote," and that according to the statute those non-compliance votes are illegal.
Mr. Meyner received 1,506 more votes than Mr. Wene in the said primary. There can be no argument with the statement that every American citizen of proper age and residence is entitled to vote in every primary or general election, and that in fact, it is his or her civic duty to discharge this obligation. The Meyner plurality was given by qualified citizens registering their choice in a free and fair election.
The contestant cites In re Ray, 56 A.2d 761, 26 N.J. Misc. 56 (Cty. Ct. 1947) and In re Freeholders of Hudson County, 105 N.J.L. 57, 143 A. 538 (Sup. Ct. 1928). These two authorities merely refer to the necessity of proper registration. Of course, registration is a condition precedent to the right of exercising one's franchise to vote. But R.S. 19:23-45 concerns balloting procedure, not registration. It is under article 9 of chapter 23, entitled, "Balloting Procedure."
The purpose of the statute in question, the contestant argues, is to prevent illegal primary voting of one-day Democrats or Republicans. The present statute, R.S. 19:23-45, is not a panacea for meeting this evil. That section does not assure that if a person has designated a particular party *375 as his choice, by signing a declaration, he will not vote in the primary election for the candidate of another party until two subsequent annual primary elections shall have passed or that he is not disqualified for the current primary of that party.
Prevention of wrongful primary voting is assured only by election officials' careful enforcement of R.S. 19:31A-8 and R.S. 19:23-46, as well as of the first three paragraphs of R.S. 19:23-45.
There can be no question of the constitutionality of the statute, Hopper v. Stack, 69 N.J.L. 562 (Sup. Ct. 1903).
In re Stoebling, 16 N.J. Misc. 34, 196 A. 423 (Cir. Ct. 1938), presented for consideration by the contestant, does not seem to have any relevancy to the query here under advisement.
Election laws are enacted to insure honest elections. However, election laws should be liberally construed, Kilmurray v. Gilfert, 10 N.J. 435 (1952), but not "so as to deprive voters of their franchise or so as to render an election void for technical reasons." (Id., at p. 440)
The contestant seems to appreciate that it was the neglect or dereliction of the district election boards or of a county election board which brought about the conditions herein complained of, if there was any irregularity. If their acts were the cause, certainly an innocent voter should not be disenfranchised therefor. However, the contestant claims that the requirement for "declaration" is a mandatory provision. His argument is that the language and the meaning of the statute is clear, and it should not be controlled by judicial construction. Douglass v. Essex County, 38 N.J.L. 214 (Sup. Ct. 1876); Bullock v. Biggs, 78 N.J.L. 63 (Sup. Ct. 1909); Doherty v. Spitznagle, 104 N.J.L. 38, 139 A. 424 (Sup. Ct. 1927). In approaching the question to be answered, this court will not declare or consider the wording of the statute of no consequence, nor does it believe that the establishment of such a precedent as the court may pronounce in passing upon the amended complaint herein, would *376 nullify the clear wording of the statute, R.S. 19:23-45, as amended. Certainly it could not interfere with the legislative functions, nor would the court substitute its judgment in the place and stead of the Legislature, which clearly has the sole function, power, and responsibility to enact laws relating to and regulating elections. But there still remains here the judicial duty to interpret a provision which is, at best, ambiguous, and to declare the consequences of non-compliance, if any, in the light of settled rules of statutory construction.
The argument advanced that the statute should be strictly construed against the voter is contrary to the principles long imbedded in our jurisprudence and cited hereinafter.
I have also considered the ruling of the court in Richardson v. Radics, 21 N.J. Misc. 466 (Cir. Ct. 1943), relied on by the contestant, in which there was a contest under R.S. 19:29-1 et seq., of the result of a city commission election in New Brunswick. There, however, the issue was the casting of ballots by unregistered voters, and this court can see no analogy to its present inquiry. (Note the reversal of the Richardson case on another ground in 131 N.J.L. 406 (Sup. Ct. 1944)). Laws directing the way and manner in which elections shall be conducted are generally construed by the courts as directory, unless a non-compliance with their terms is expressly declared to be fatal. 20 C.J., § 223, page 181; 29 C.J.S., Elections, § 214. Elections should never be held void unless they are clearly illegal. No fraud is charged in the instant case. It is to be conceded that our statutes contemplate that a voter in a primary election should declare which party he or she desires to join, affiliate with and support. It is not in a general sense an open primary. However, there is nothing to prevent a person who has voted in a party primary, voting in the general election for the candidate of the other party. What is the purpose of a primary? It is merely to afford the voter the right to exercise his right of suffrage by having an opportunity to select the candidate and participate in the proceedings and acts *377 of a political party. Election laws for the regulation of elections in respect to the form and contents of ballots, or as to balloting procedure, are directory only, and not mandatory, and mere irregularities therein will not vitiate an election which is fair in other respects. Attorney-General v. Town of Belleville, 81 N.J.L. 200, 80 A. 116 (Sup. Ct. 1911).
In Hackett v. Mayhew, 62 N.J.L. 481, 41 A. 688 (Sup. Ct. 1898), Mr. Justice Dixon said, at p. 482:
"It is undoubtedly the duty of the courts to enforce these provisions just as they were enacted (Chandless v. Day, 27 Vroom 682), but courts will not go beyond them to defeat the expressed will of the voter because of a mere irregularity."
See also Davis v. Bell, 27 N.J.L. 76 (Cir. Ct. 1904).
Can it be said that a voter could be held either directly or indirectly responsible for the failure of the district or county board to present to him or her for signature what the statute may require to be signed by the said voter in a primary election? Certainly it was not the intent of the Legislature, nor is it proper, to defeat the vote of a fully qualified and registered citizen by an act for which he was neither directly nor indirectly responsible, nor for a negligent default, act or misconception of duty in respect to a form required under a statute to be supplied by the election officials and not required to be furnished by the voter himself. In re Canvassers' Returns, 25 N.J.L.J. 115 (Cir. Ct. 1902).
As I have previously stated, a failure to effectuate a mere directory requirement of the election laws will not cause the courts to regard an election as void unless fraud or miscarriage of a free election is shown. This is a fundamental principle in the law of our State, Burrough v. Branning, 9 N.J.L.J. 110 (Cir. Ct. 1886); Love v. Board of Freeholders of Hudson County, 35 N.J.L. 269 (Sup. Ct. 1871).
Certainly irregularities on the part of election officers or others which do not appear to affect, alter or void the voting, the counting, or the returns, will not form a *378 ground of contest. Lehlbach v. Haynes, 54 N.J.L. 77, 23 A. 422 (Sup. Ct. 1891). The primary election law is designed to ensure that the free and fair choice of a party's members should prevail and the honest expression of the voters as evidenced by the total vote cast should not be reversed by the courts, but rather they should sustain them, if possible. In the instant case the most that could be said is that the votes about which the contestant complains involve a purely technical and inconsequential deviation, if any at all, due to a failure not by the voters, but by the election board or election officials themselves. The voters in good faith attempted to comply with the statute under the guidance, direction, and control of the election board.
R.S. 19:4-1 sets forth the qualifications of the voter. It is conceded that all of the challenged voters in the instant case were qualified voters and entitled to vote in the Democratic primary, the only objection to their ballots being non-compliance with the requirement in question for "declarations."
If any objection to such a voter casting his ballot was to be interposed, it could well have been done by the challengers of the respective parties who, under the law, were permitted and authorized to be in the election districts voting locations for that very purpose. The boards themselves could and should have raised any such objection, and not permitted a voter to vote without filing and signing the declaration, if same were essential. How many of these voters now being challenged for the first time after the primary election may have voted for the first time, having just attained their majority or otherwise? It is utterly impossible to say what voters, if any, cast an illegal vote. It is impossible from the present record, except through a crystal ball, to determine which one of the four Democratic candidates received the votes the contestant claims were illegally cast in these two counties. The ballot is secret. It seems quite questionable whether or not a voter could actually be compelled against his will to disclose for whom he voted, notwithstanding R.S. 19:29-7, and if this fact cannot be ascertained, no proper *379 deduction could be made against the total of the candidate previously credited with said vote. The question herein presented is a futile one, so far as determining how to charge the totals of the four candidates with any of the votes claimed by the contestant to be illegal.
Time is of the essence in having this matter disposed of, and that is the reason for my expediting these conclusions.
This motion is analogous to that in the case of In re Clee, 119 N.J.L. 310 (Sup. Ct. 1938), where a statutory petition was dismissed, as not setting forth a proper claim for relief. Mr. Chief Justice Brogan, speaking for the Supreme Court in In re Clee, supra, at page 325, said:
"Of course, it is palpable, even assuming illegal votes were cast, that no one can truthfully say for whom they were cast.
I again advert to the words of the opinion, upon which it is difficult to improve, in dealing with an identical situation in the case of Lehlbach v. Haynes, supra, `the presumption is with the incumbent, and we cannot assume, without evidence against that presumption, that the illegal ballots were for him rather than his opponents.' And again, the language in Groth v. Schlemm, supra (at p. 436), `* * * Mere suspicion does not establish the legality of the election of the petitioner or the defeat of the incumbent.'"
It must be clear to any one reading the statute under consideration, that the Legislature did not intend, upon the failure on the part of the election board officials throughout the State to require voters to sign a declaration stating in which party they wish to vote, without any fault of the voters or the candidates, to disenfranchise such voters, particularly when they substantially did this very thing by announcing their choice of party and signing the register on which their party affiliation was noted by the election official at the time of voting. There is nothing in the pleadings before this court which charges that a single voter would have voted otherwise than he did if he had signed such a declaration, or that any unqualified voter voted because of his failure to have executed a written declaration.
In my opinion, all of the provisions of R.S. 19:23-45 as amended have been substantially complied with. The election *380 boards in Warren and Hudson Counties concededly complied with the provisions of R.S. 19:31A-8 as amended, and R.S. 19:23-46. These sections provided that each voter in a primary election shall announce his name and declare for which party he wishes to vote, i.e., either Republican or Democratic; that the election board by referring to the permanent registry books shall determine whether the voter is registered and eligible to vote under R.S. 19:23-45 as amended; that the voter shall sign the signature copy register and at the same time the election official shall enter alongside the name of the voter the notation of the party in which primary he is voting. If the voter is not disqualified from voting in the primary of the party he announces, he receives a ballot of that party. The voter, having done all this, has fully declared in which party he desires to cast his ballot in the primary election. It would serve no further useful or practical purpose to have him sign a loose memorandum containing even less information than above and which memorandum would not be a permanent record, and might easily be misplaced, lost or destroyed. And the statute, R.S. 19:23-45, as amended, does not provide any particular kind of form nor is there any direction for the safekeeping and preserving of such a form, such as will be found in the statutes in connection with all permanent voting and registration records. Can it be said a separate written declaration was intended by the 1952 amendment? Possibly not.
I have already indicated that it is this court's opinion that the provision in question, even if deemed to require a separate declaration, is directory and that the failure by the election officials or officers to observe and have same carried out by a voter, cannot disenfranchise any voter unless there is evidence of fraud, corruption, non-registration or other illegality affecting the result of the election. In 3 Sutherland, Statutory Construction (3rd ed.), sec. 5820, p. 113, we find the following:
"Provisions of statutes governing the conduct of elections which have the purpose of securing a complete and enlightened vote or preventing fraud, where failure to comply is capable of influencing *381 the outcome of the election, are mandatory. But as to inconsequential deviations which cannot affect the result of the election, or deviations from provisions intended primarily to secure timely and orderly conduct of elections, a directory construction is generally applied. And courts may make a determination of the merits as to whether the results of the election actually were affected by failure to follow provisions of a statute, in deciding whether an election should be invalidated thereby. * * *
* * * Directions to election officials are generally directory where there is no fraud shown, and a mandatory construction would operate to nullify the free choice of the electorate. Registration laws are liberally construed and held to be directory to avoid depriving individuals of their franchise. * * *."
The contestant had a right to challenge, by challengers duly designated, any voter who attempted to vote illegally in this primary. This he failed to do. In Lehlbach v. Haynes, 54 N.J.L. 77 (Sup. Ct. 1891), the court, referring to certain alleged irregularities in a Newark election, on page 81, said:
"* * * a person acted as a member of the election board without being legally appointed and sworn, and that in several districts the poll books were not filed according to law. It does not appear that these irregularities had any effect upon the voting, the counting or the returns, and consequently, for present purposes they are immaterial."
The contestant, as well as the incumbent, both refer to Burrough v. Branning, 9 N.J.L.J. 110 (Camden Circuit, 1886), wherein Judge Parker said at page 115:
"* * * The omission of such duty on the part of such officers is only an irregularity.
It is a principle of universal application that an irregularity which does not deprive a legal voter of his vote, (not accompanied with fraud by the party seeking the benefit thereof) will not vitiate the election. The omission by election officers to discharge some duty merely directory will not set aside the return. If members of a town committee, whose duty it is to set off election districts under certain circumstances, fail to do their duty, the will of the voters is not to be thereby nullified. There are cases where the judges of election have been guilty of acts which rendered them liable to indictment, and yet (in the absence of fraud by the party who claimed a benefit from the result) the election was held valid. If this be so surely the will of the people is to be given effect in the absence of fraud if only irregularly expressed. Negligence or *382 mistake in the performance of duty by election officers will not be allowed to stand in the way so as to defeat the expression of the popular will. * * *"
See Smith v. Howell, 60 N.J.L. 384, 387 (Sup. Ct. 1897). I again refer to one of the contestant's authorities, In re Stoebling, 16 N.J. Misc. 34, 196 A. 423 (Cir. Ct. 1938) where, at page 37, the court said:
"The object of elections is to ascertain the popular will and not to thwart that will; to secure the rights of duly qualified electors and not to defeat them. The election laws were enacted to secure freedom of choice and to prevent fraud and corruption. Technicalities should not be used to make the right of the voter insecure." (Emphasis supplied)
I am satisfied that the provision of the statute in question is a procedural matter, In re Clee, supra.
The language of R.S. 19:23-45, as amended, the statute primarily under consideration in the instant case, is misconstrued by the contestant in another regard. It reads as follows:
"A voter who votes in a primary election of a political party shall be deemed to be a member of that party until two subsequent annual primary elections have elapsed after casting of such party primary vote. [Emphasis supplied].
A voter who has not voted in a primary election of a political party for two subsequent annual primary elections shall not be permitted to vote in any primary election of a political party until he has first signed and filed with the district board a declaration designating the political party in whose primary election he desires to vote."
It is clear that the provision of this section concerning declarations does not apply to all voters not voting in two consecutive elections, as assumed by contestant. The reference is only to those voters who have not voted in a primary election "for two subsequent primary elections" after casting a primary vote previously.
These two paragraphs of the aforesaid section must be read together. The contestant has not done so. Therefore the complaint includes a class of voters unquestionably not *383 required to sign any declaration, even if a separate form of declaration was required from any one at all. The complaint does not set forth any charge that the number of voters who skipped two primary elections after voting in a prior primary, without filing the declaration, if same were necessary, was so great as to "challenge" the result of the election or change the result. R.S. 19:29-1 (a) and (e). This reason alone would suffice for this motion to prevail.
In In re Clee, supra, the court again, at pages 327 and 328, said:
"* * * there is no presumption that the votes so received were cast for the incumbent rather than the contestant (Lehlbach v. Haynes, supra); and, finally, there is no allegation that the votes so received would change the result, nor are facts stated from which it might reasonably be concluded that because of such omission of duty on the part of the several election boards the result of the election is challenged or would be changed. These allegations are therefore insufficient.

* * * * * * * *
If, as the petition says, there were, in this manner, forty-eight thousand illegal votes cast, for whom were they cast? * * * This charge is, for these reasons, likewise insufficient."
The rule in our State is firmly established that if any irregularity or any other deviation from the election law by the election officials is to be adjudged to have the effect of invalidating a vote or an election, where the statute does not so expressly provide, there must be a connection between such irregularity and the result of the election; that is, the irregularity must be the producing cause of illegal votes which would not have been cast or of defeating legal votes which would have been counted, had the irregularity not taken place, and to an extent to challenge or change the result of the election; or it must be shown that the irregularity in some other way influenced the election so as to have repressed a full and free expression of the popular will. Nothing of this kind is even charged or suggested in the instant case.
Judge Jayne in Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951) in considering the question as to *384 whether or not an irregularity should vitiate an election, said at page 16:
"(1) The processes of public elections in this country are not of common law origin. Except for the express requirements of the constitutional security they are the creatures of statutory law. Therefore the courts refrain from an indulgence in any judicial action that refashions legislation regulating and facilitating the conduct of elections and which is calculated to secure the right of suffrage and the free expression of the choice of the voter.
(2) And so, where the statute expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of the requirement, uniformly respect the legislative declaration.
(3) But where, as here, there is no such legislative declaration the courts consider the nature of the irregularity, its materiality, the significance of its influence and consequential derivations in order to determine whether the digression or deviation from the prescribed statutory requisitions had in reasonable probability so imposing and so vital an influence on the election proceedings as to have repressed or contravened a full and free expression of the popular will, and thus deduce the legislative intent reasonably to be implied."
In discussing the distinction between those provisions of the election laws which would be regarded as mandatory in the sense that non-compliance therewith would have the result of invalidating a vote or an election, the court said (at p. 17):
"* * * The predominant inquiry centralizes on the intention of the Legislature. To hold that every departure from the terms of our election laws shall taint the election proceedings with a fatal blemish would be followed by far-reaching and most disturbing consequences. It has been repeatedly stated that whether a statute is mandatory or not depends on whether `the thing directed to be done is of the essence of the thing required.' 2 Lewis' Sutherland on Stat. Const. (2d ed.), § 610. What has been made a matter of the essence is often to be ascertained only by judicial construction. Cf. Sheldon v. Sheldon, 100 N.J. Eq. 24 (Ch. 1926). `The intention of the Legislature is to be taken or presumed according to what is consonant to reason and good discretion.' Morris Canal & Banking Co. v. Central Railroad Co., 16 N.J. Eq. 419 (Ch. 1863); May v. Nutley, 111 N.J.L. 166, 168 (Sup. Ct. 1933).
* * * But if it is evident that notwithstanding the dereliction of duty of the officer there was a fair election and an honest return and no violation of such matters as the recognized *385 inherent and inviolable rights of the voters, the courts in the public interest have frequently ignored the harmless irregularity. In re Smock, 5 N.J. Super. 495 (Law Div. 1949); 18 Am. Jur. 300, § 183.
(6) The following quotation has a familiar cadence: "The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless by the direct mandate of a valid statute no other construction can be given.' Bliss v. Woolley, 68 N.J.L. 51, on p. 54 (Sup. Ct. 1902); Lane v. Otis, 68 N.J.L. 656, on p. 660 (E. & A. 1903); Attorney-General v. Belleville, 81 N.J.L. 200, on p. 206 (Sup. Ct. 1911)."
There is an important distinction between the binding effect of election laws upon officials entrusted with their administration in connection with their being subject to a punishment for a violation thereof, or the effect of such provisions if enforced as a challenge at the time of voting, on the one hand, and as to whether, on the other hand, an irregularity as to a particular provision due to no fault of the voter and not involving fraud or repression of the full and free expression of the popular will, should after the election have the effect of invalidating such votes. In re Smock, 5 N.J. Super. 495 (Law Div. 1949).
None of the foregoing conditions exist in the present case. Unquestionably thousands of voters in both Republican and Democratic primary of 1953 cast their ballots in many counties without these declarations having been requested from them or supplied to them for execution by the election board officials. Little attention appears to have been paid in many counties by the local election boards to the provision here in question, which was adopted for the first time in 1952 and apparently was not well understood because of the fact, probably, that it apparently seemed to duplicate other existing provisions of the law. Can any one say that it was the Legislature's intention to disenfranchise these many thousands of voters of both parties in a state-wide election for such a minor, unimportant technicality?
In Kilmurray v. Gilfert, 22 N.J. Super. 280 (App. Div. 1952), and 10 N.J. 435 (1952) there will be found expressed by both Judge McGeehan in the Appellate Division, *386 and Chief Justice Vanderbilt, for the Supreme Court, this court having sat in the first instance in that case, the rule that election laws are to be liberally construed, so as to effectuate their purpose and to avoid disfranchisement of voters for technical reasons. The provisions of the statute therein considered were held to be directory.
Attention is also directed to the cases therein cited. The mere fact that a statute is couched in mandatory language in the election laws does not necessarily mean that a compliance with such provision is mandatory. There are many provisions which are only directory. In the instant case the failure, assuming there was a failure, to comply with the statutory provision, certainly would not invalidate either the ballots or the nomination. Kilmurray v. Gilfert, supra. Mr. Chief Justice Vanderbilt, speaking for the Supreme Court, said at p. 440:
"Election laws are to be liberally construed so as to effectuate their purpose, Carson v. Scully, 89 N.J.L. 458, 465 (Sup. Ct. 1916), affirmed, 90 N.J.L. 295 (E. & A. 1917). They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons, * * *."
Finally, I believe this motion should be influenced by the provisions of R.S. 19:3-9, which reads as follows:
"When upon the trial of any action or proceedings instituted under this title for the purpose of securing a determination that any nomination for or election to any public office or party position is null and void, it shall appear from the evidence that the offense complained of was not committed by the candidate, or with his knowledge or consent, and that all reasonable means were taken by or on behalf of the candidate to prevent the commission of any such offense, or that the offenses complained of were trivial or unimportant, and that in all respects his candidacy and election were free from all illegal acts, or that any act or omission of any candidate complained of arose from accidental miscalculation or from some other reasonable cause of like nature, and in any case did not arise from any want of good faith, and under the circumstances it seems to the court or supreme court justice to be unjust that the candidate shall forfeit his nomination, position or office, then the nomination or election of such candidate shall not by reason of such offense complained of be void."
*387 I am constrained necessarily to apply the foregoing section to this case and believe that under the undisputed circumstances presented in this case, it would be unjust that the incumbent, Mr. Meyner, forfeit his nomination.
The court concludes that the motion in behalf of the incumbent should be granted and summary judgment will be entered accordingly.