CHARLES P. KILMURRAY AND JOHN J. KIJEWSKI, PLAIN-
TIFFS-APPELLANTS, v. WILLIAM H. GILFERT, COUNTY
CLERK OF HUDSON COUNTY, WILLIAM MacPHAIL,
SUPERINTENDENT OF ELECTIONS OF HUDSON
COUNTY, AND WILLIAM L. JOHNSTON AND HUDSON
COUNTY DEMOCRATIC COUNTY COMMITTEE, DE-
FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1952—Decided October 15, 1952.

Smalley, J. S. C., dissented.

Before Judges McGeehan, Bigelow and Smalley.

Mr. *Morris Chesler* argued the cause for appellants (*Mr. Joseph S. E. Verga*, of counsel).

*Mr. Frederick J. Gassert* argued the cause for respondent William H. Gilfert (*Mr. Daniel T. O'Regan,* attorney).

*Mr. Charles M. Egan* argued the cause for respondent William L. Johnston (*Mr. Robert H. Doherty,* attorney).

*Mr. Joseph F. S. Fitzpatrick* argued the cause for respondent Hudson County Democratic County Committee (*Mr. John B. Graf,* attorney).

*Mr. Frank V. Introcaso* appeared for respondent William MacPhail.

The opinion of the court was delivered by

McGEEHAN, S. J. A. D. At the primary election held in Hudson County on April 15, 1952, James F. Murray was duly nominated as the candidate of the Democratic Party for the office of register of deeds and mortgages. James F. Murray died on September 29, 1952. On the following day, September 30, 1952, the Hudson County Democratic County Committee selected William L. Johnston as the candidate of the Democratic Party for such office to fill the vacancy caused by the death of James F. Murray; and on the same day, the said county committee filed a statement of such selection with the county clerk. Both Charles P. Kilmurray and John J. Kijewski are voters and citizens of Hudson County and candidates for the same office; Kilmurray was nominated at the primary election as the candidate of the Republican Party and Kijewski was nominated by direct petition under the designation "The People's Choice."

On October 1, 1952, Kilmurray and Kijewski, as plaintiffs, filed a civil action in lieu of prerogative writ in the Superior Court, Law Division, Hudson County, in which they sought to set aside the action of the county clerk in accepting for filing the statement of the Hudson County Democratic County Committee certifying the selection of William L. Johnston as the candidate to fill the vacancy caused by the

death of James F. Murray and a restraint against the printing of any ballots containing the name of William L. Johnston substituted for the name of James F. Murray. There being no genuine issue as to any material fact, plaintiffs and defendants each moved for summary judgment as a matter of law. On October 7, 1952, judgment was entered in favor of the defendants, and the plaintiffs appeal. It is conceded that no general election ballots have yet been printed and that the county clerk can make the substitution in compliance with the statement filed by the county committee, if it is valid.

At the outset we are met with the contention of the defendants that this appeal, as the appeal in *In re Recheck of Voting Machines,* 19 *N. J. Super.* 187 *(App. Div.* 1952), should be dismissed because the Appellate Division lacks jurisdiction. In the *Recheck of Voting Machines* case, the judge of the Law Division of the Superior Court, in deciding the validity of the ballots there involved, acted under a statutory jurisdiction conferred upon such judges by *R. S.* 19:28-1 *et seq.,* and we there held (as required by the decision of our Supreme Court in *Bergen County Sewer Authority v. Little Ferry,* 5 *N. J.* 548 (1950)) that review of the action of such a judge, sitting as a designated legislative agent, when permitted, must be had in the Law Division of the Superior Court under *Rule* 3:81-2 and cannot be had in the Appellate Division on an appeal taken as a proceeding in lieu of prerogative writ. The proceeding now on appeal was brought before the Superior Court, Law Division, not pursuant to a statutory jurisdiction conferred upon such court, or a judge thereof, but rather as a proceeding in lieu of prerogative writ for the review of the acts of a public official, for which no other method of review is provided. *Cf. Introcaso v. Burke,* 3 *N. J. Super.* 276 *(Law Div.* 1949). The Appellate Division has jurisdiction of an appeal from a judgment entered in such a case.

The defendants also argue that the plaintiffs were improper parties and had no standing to bring the action

in the trial court. The action was one to force a public official to comply with the provisions of a statute governing his responsibility in the conduct of the general election. The plaintiffs are citizens and qualified voters in Hudson County and, as such, have a standing to bring such a suit. *MacManus v. Allan*, 2 *N. J. Super.* 557 (*Law Div.* 1949).

When a vacancy among candidates nominated at the primary election is created by the death of a nominee before the general election, the only authority for the selection of a candidate to fill such vacancy, and for the substitution of his name on the general election ballot for the name of the deceased candidate, is to be found in *R. S.* 19:13–18 and *R. S.* 19:13–20 (as amended *L.* 1949, c. 24, § 4), which in pertinent part provide:

"19:13–18. *In general.* When a person so declines his nomination, or if a petition or certificate of nomination, or if any nomination, be insufficient or inoperative, or if a nominee shall die, or for any reason vacate his nomination, the vacancy so occasioned may be filled in the manner outlined in the succeeding sections."

"19:13–20. In the event of a vacancy, howsoever caused, among candidates nominated at primaries, which vacancy shall occur not later than thirty-seven days before the general election * * * a candidate shall be selected in the following manner: * * * in case of an office to be filled by the voters of an entire county * * * the candidate shall be selected by the county committee of such political party within the county * * *. The selection shall be made no later than thirty-four days prior to the general election, and a statement of the selection shall be filed as follows: * * * the county committee * * * with the county clerk. Such statement shall not be filed later than thirty-four days prior to the general election * * *. The person so selected shall be the candidate of the party for such office at the ensuing general election."

The general election in 1952 will be held on November 4. Therefore, a vacancy which occurred on or before Sunday, September 28, 1952, occurred "not later than thirty-seven days before the general election"; a selection of the candidate by the county committee made on or before Wednesday, October 1, 1952, was "made no later than thirty-four days prior to the general election"; and a statement of such selection filed with the county clerk on or before October 1,

1952, meets the requirement that "such statement shall not be filed later than thirty-four days prior to the general election." *Berry v. Gates,* 129 *N. J. L.* 1 (*Sup. Ct.* 1942) ; *Stroud v. Consumer's Water Co.,* 56 *N. J. L.* 422 (*Sup. Ct.* 1893) ; *Barron v. Green,* 13 *N. J. Super.* 483 (*Law Div.* 1951).

It is conceded that the selection of the candidate by the county committee was made and the statement of such selection filed within the time permitted by the statute. The plaintiffs contend that neither the selection nor the filing of the statement can be legally effective, because the death of candidate Murray, and thus the vacancy, occurred later than Sunday, September 28, namely, on Monday, September 29. The defendants argue that the legislative intent was to permit the party committee to fill a vacancy among candidates nominated at the primary election, provided the vacancy occur, the selection be made and the statement filed, all "not * * * later than thirty-four days prior to the general election," and that the 37-day provision of the statute is purely directory.

The mere fact that a time limitation is expressed in mandatory language in the election laws does not necessarily mean that compliance with the time limitation is mandatory. There are many time limitations so fixed which are only directory. For example, there is a requirement in *R. S.* 19:14–1 that "Every County Clerk shall have ready for the printer on or before noon of the seventeenth day prior to the general election" a copy of the contents of official ballots required to be printed for use at the general election. It is obvious that this time requirement is merely directory, because the mere fact that the county clerk failed to have such copy ready until the sixteenth day prior to the election, certainly would not invalidate either the ballots or the election.

In determining the question before us, we must keep in mind that the whole primary election procedure is intended to result in the appearance on the general election ballot of

the names of the candidates chosen by the major political parties for the particular offices to be filled. In case the party nominee dies or a vacancy occurs for any other reason before the general election, the Legislature has provided for the attainment of this objective by authorizing the elected party representatives to select a substitute candidate to appear on the general election ballot. Were it not for the absolute necessity for certain time limits to permit printing of ballots and compliance with other requirements of the election law which are necessary in order to hold the general election, we assume that the policy of the law would be to permit the substitution of a candidate by the representatives of a political party, in a case such as this, at any time up until the very day of the general election. However, it is obvious that there must be a time before the election, after which changes cannot be made in the general election ballot, and when the Legislature has fixed such a time it is a mandatory requirement and must be met.

We turn now to consideration of the two time periods mentioned in *R. S.* 19:13–20. The filing of the statement of the selection with the County Clerk must be "not * * * later than thirty-four days prior to the general election." Prior to 1942 the statute permitted the filing of such a statement of selection, if filed "not * * * later than twenty-two days prior to the general election." The amendment of *R. S.* 19:13–20, providing that the filing of such statement with the county clerk shall be not later than 34 days prior to the general election, was made necessary by the adoption of the Military Service Absentee Voting Law (*L.* 1942, *c.* 18), which provided in section 5 that the county clerk "shall forward by mail to each person in such active service" a ballot containing the names of the candidates to be voted upon at the election "not later than twenty-five days prior to any such election." Thus, the 34-day provision for the filing of the statement appears to be a time limitation directly connected with and necessary for the proper conduct of the election. This time limitation was met in the pres-

ent case. The 37-day time limitation upon which the plaintiffs rely is in no way connected with any time need for the preparation of ballots or for the conduct of the election itself, in any particular. That the Legislature did not consider the 37-day period as any essential time element which had to be met in the conduct of the election, is evidenced by other sections of the election law. If a candidate has been nominated by direct petition, and a vacancy is caused by the death of such candidate prior to the thirty-fourth day before the election, it appears that under *R. S.* 19:13–19 (as amended *L.* 1942, *c.* 50, § 3), such vacancy can be filled by the nomination of a substitute in the same manner, by direct petition, provided the petition of nomination be filed "not later than thirty-four days before the day of election." Again, if the vacancy under *R. S.* 19:13–20 is occasioned by the filing of any instrument, the 37-day condition of this section would be met in 1952 if the instrument were filed on Monday, September 29th, by virtue of the provisions of *R. S.* 19:11–1. *Cf. In re Scott,* 2 *N. J. Misc.* 1058 (*Sup. Ct.* 1924). The last mentioned section provides:

"19:11–1. Day for filing documents or performing official duties falling on Sunday or legal holiday.

Should the day for the filing of any petition, declination, resignation, instrument in writing or other paper or document required to be filed in any office under the provisions of this title, or for the performance of any duty required by this title by any person, candidate or official, fall upon the first day of the week, commonly called Sunday, or any legal holiday, such filing or performance of duty shall be effected upon the next following business day."

Election laws should be liberally construed. *Carson v. Scully,* 89 *N. J. L.* 458, 465 (*Sup. Ct.* 1916), affirmed by evenly divided court 90 *N. J. L.* 295 (*E. & A.* 1917). Unequal operation and unsubstantial distinction should be avoided, if possible, in the construction of statutes. 50 *Am. Jur., Statutes,* § 372. It seems to us that the broad design of our election laws, of providing a general election ballot containing the names of the candidates of the major political

parties and of all other parties and groups qualifying, would be seriously impaired by any construction of *R. S.* 19:13–20 which would invalidate the selection of a substitute party candidate to fill the vacancy, and the filing of the statement of such selection, although both selection and filing occurred within the time permitted therefor by the statute.

Judgment affirmed.

SMALLEY, J. S. C. (dissenting). The only question here involved that I am in disagreement with my colleagues is as to the meaning of *R. S.* 19:13–20 as amended: The pertinent provisions are as follows:

"19:13–20. In the event of a vacancy, howsoever caused, among candidates nominated at primaries, which vacancy shall occur not later than thirty-seven days before the general election, * * * a candidate shall be selected in the following manner: * * * in case of an office to be filled by the voters of an entire county or a portion thereof involving more than one municipality, the candidate shall be selected by the county committee of such political party within the county. * * * The selection shall be made no later than thirty-four days prior to the general election, and a statement of the selection shall be filed as follows: * * * the county committee or subdivision thereof with the county clerk. Such statement shall not be filed later than thirty-four days prior to the general election. * * * The person so selected shall be the candidate of the party for such office at the ensuing general election."

There is no dispute that James F. Murray, Sr. was nominated at the 1952 primary election as the candidate of the Democratic Party for the office of register of deeds and mortgages for Hudson County. Mr. Murray, unfortunately, passed away on Monday, September 29, 1952. On the following day, September 30, the county committee of his party met and selected William L. Johnston as the candidate of the Democratic Party to fill the vacancy and, on the same day, filed a statement of such selection with the County Clerk of Hudson County.

Unless my calculations are faulty, James F. Murray, Sr. died 36 days prior to the general election to be held on

November 4, 1952. Accordingly there was no vacancy that could be filled by the county committee.

It is fundamental that where there is an ambiguity in a statute, courts will supply judicial interpretation. The rule that a clear and unambiguous statute requires no judicial interpretation is equally fundamental. I fail to find any ambiguity in the statute under review. It is argued that in view of the fact that a county committee has until the 34th day before general election to file its selection with the county clerk in the event of a vacancy, that this is an indication that the Legislature intended to allow a county committee to fill any vacancy that occurred at any time prior to the 34th day before general election. It could be just as well argued that the Legislature contemplated that in the event there was a vacancy on or before the 37th day prior to general election, that a county committee might need some time for the giving of necessary notice to the members of the county committee of the meeting to be held and some further time for the consideration and selection of some person to fill the vacancy but would require the county committee's selection to be filed with the county clerk on or before the 34th day before general election.

It may be assumed that the Legislature has an appreciation of the necessity of the county clerk having sufficient time to set in motion the necessary machinery to hold an election. These duties, whether they devolve upon a county clerk or superintendent of elections or both, are important duties. The printing and mailing of ballots, the getting into readiness the voting machines are tasks that need to be done and done properly. It is more important that no names should be printed on a ballot or appear on a voting machine that do not rightfully belong thereon.

I do not understand that in the event that Mr. Johnston's name does not appear on the printed ballot or is not indicated on the voting machine, that the voters of Hudson County will be deprived of their right of franchise. The prohibition in the statute preventing any political party

filling any vacancy that may occur after the 37th day before general election does not prevent the voters from indicating their personal choice for any person for any such office. It does, however, prevent a political party from filling any such vacancy so occurring.

The Legislature has the power to regulate elections and may also permit the county committee or any other such political body the right to select its candidate in the event of a vacancy. It has, however, the same authority to prescribe the manner in which this right of selection may be exercised.

All of the parties cite *Sharrock v. Keansburg*, 15 *N. J. Super*. 11 (*App. Div.* 1951) where Judge Jayne speaking for the court concerning an election contest over the result of a referendum held in the Borough of Keansburg said,

"The right of suffrage in a government of and by a free people must always be regarded with jealous solicitude. To overthrow the expressed will of a large number of voters for no fault of their own and solely because of some harmless irregularity would in many cases defeat the paramount object of the election laws."

Surely, there can be no quarrel with this pronouncement but it is interesting to note that Judge Jayne, at *page* 16, enunciated the rule that seems to be applicable here.

"The processes of public elections in this country are not of common law origin. Except for the express requirements of the constitutional security they are the creatures of statutory law. Therefore the courts refrain from an indulgence in any judicial action that refashions legislation regulating and facilitating the conduct of elections and which is calculated to secure the right of suffrage and the free expression of the choice of the voter. And so, where the statute expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of the requirement, uniformly respect the legislative declaration."

The observance of the provision in *R. S.* 19:13–20 as to how and when a county committee of a political party may

fill a vacancy is not the overthrowing of the expressed will of the voters at any election, but merely the regulation of the action of political parties fulfilling a vacancy.

I surmise that the unfortunate passing of Mr. Murray one day after the time limitation imposed by the Legislature when county committees can properly fill a vacancy has aroused certain feelings of frustration which have resulted in the rather ingenious arguments for the by-passing of the applicable statute.

The proposition has been stated that since the Legislature did not see fit to include the 37-day limitation in *R. S.* 19:13–19, relating to the filling of a vacancy where a candidate has been nominated by direct petition, that therefore the Legislature did not consider the 37-day period as an essential time element which had to be met in *R. S.* 19:13–20. The rules of sound judicial statutory construction do not lend support to this proposition. The fact that the Legislature saw fit to include the time limitation in *R. S.* 19:13–20 when it was knowingly omitted in *R. S.* 19:13–19 is weighty evidence that the law makers intended the time limitation to be an essential element of the former statute.

Assuming, but not admitting, that it is unwise to impose the limitation as set forth in *R. S.* 19:13–20, "The remedy, if one is needed, lies in the law making body." *Hawkes v. Gates*, 129 *N. J. L.* 5, 11 (*Sup. Ct.* 1942).

It cannot be seriously suggested that the Legislature did not have full knowledge and appreciation of the limitation of time imposed by *R. S.* 19:13–20.

Chief Justice Gummere in *Island Heights, &c., Co. v. Brooks & Brooks*, 88 *N. J. L.* 613, 616 (*E. & A.* 1916) speaking for the court said:

"But, as we have already said, it is not a question of what would have been wise for the legislature to have enacted with which courts are concerned, but what is expressed in the statute; and when the terms used therein clearly express the legislative intent, nothing remains to the courts except the enforcement of that intent as expressed in the enactment."

*R. S.* 19:13–20 provides in plain verbiage what the county committee may do when a vacancy occurs from and after the primary election of April 15, 1952 until the date of September 28 of this year, 1952. If a county committee seeks to fill a vacancy occurring on September 29, 1952, the date of Mr. Murray's death, or any time thereafter, its action is a nullity.

I vote to reverse the court below.