202 N.J. Super. 447 (1985)
495 A.2d 438
DARRAH FOOD SERVICES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, SUSAN DARRAH, JAMES ROSSO, MARY ROSSO, MARGARET SLACK, JOYCE SLACK, JILL SLACK, MARGARET KNOSTER, RICHARD KNOSTER AND THOMAS BEETEL, PLAINTIFFS-RESPONDENTS,
v.
LAMBERTVILLE HOUSE, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND JOHN C. ALLEN, JR., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1985.
Decided June 28, 1985.
*448 Before Judges DREIER, McELROY and SHEBELL.
Richard F. Collier, Jr. argued the cause for appellants (Norris, McLaughlin & Marcus, attorneys; Richard F. Collier, Jr. and Patrick T. Collins, on the brief).
Mark L. First argued the cause for respondents (Jamieson, Moore, Peskin & Spicer, attorneys; Mark L. First, of counsel and on brief; Michael M. DiCicco, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*449 Plaintiffs, Darrah Food Services and its principals, agreed in 1980 to lease and manage The Lambertville House with an option to purchase the premises. The record owner of the restaurant and tavern is The Lambertville House, Inc., whose sole shareholder, John C. Allen, owns the liquor license. Plaintiffs instituted this action May 11, 1984 in the Chancery Division, Hunterdon County, alleging that in January 1982 they had exercised their option to purchase, had tendered over $100,000 of the purchase price to defendant and had been making semi-monthly payments of $2,800 since April 1982. They also alleged that they had substantially improved the property in reliance upon the agreement and claimed that defendants refused to execute the necessary consents so that the transfer of the liquor license could be approved.
In 1984 defendants listed the premises with a local broker and notified plaintiffs that they intended to file a summary dispossess action to oust them from possession. Plaintiffs obtained an Order to Show Cause requiring defendants to demonstrate why an interlocutory injunction should not be issued preventing the conveyance of the premises or other frustration of the purpose of their original agreement. After various motions and amendments of pleadings, on June 29, 1984 the parties negotiated for an entire day, with the aid of the court, and reached a settlement which was placed on the record. The settlement provided that The Lambertville House would be sold to plaintiffs and that defendants would use their best efforts and execute the necessary documents to have the liquor license transferred. The selling price of $690,000 was to be paid by a cash payment of $245,000 at closing with the balance financed by defendants. Although both parties preferred that plaintiffs obtain an SBA loan, defendants contend that the agreement provided that if the SBA did not take a second mortgage then plaintiffs could choose to obtain conventional financing and defendants would accept a second mortgage *450 behind the first mortgagee; in such case eight of the nine individual plaintiffs would guarantee the second mortgage.
Plaintiffs were given 90 days to obtain financing "with a right to extend that time for good cause shown." This provision clearly negated the usual rule that mortgage contingency time limitations are of the essence. See Schultz v. Topakyan, 193 N.J. Super. 550, 553 (App.Div. 1984).
The parties' agreement further provided that if plaintiffs could not obtain financing or if they failed to obtain ABC approval of the transfer of the liquor license, the case would revert to "ground zero," defined as the litigation status as it existed prior to the settlement, with the Chancery restraints in place. Considering the animosity and charged state of affairs that grew between the parties thereafter, their choice of the phrase "ground zero" as opposed to "square one" was prophetic.
Plaintiffs failed to obtain financing within the 90 day period and defendants brought a motion on October 5, 1984 seeking to have the case restored to the status quo ante the settlement. Plaintiffs cross-moved for an order extending the time to obtain financing. The "good cause" alleged was that much of the 90 days had been lost due to improper attempts by defendants to exact more money from plaintiffs. The trial judge granted the extension on the basis that plaintiffs had been on the premises for four years and put a substantial amount of effort and money into the property. Defendants had also contended that plaintiffs had let taxes slip substantially in arrears, but the court agreed that so long as defendants were protected against tax foreclosure, he would not require that taxes be brought current. Plaintiffs were cautioned that they would have to obtain a firm commitment by December 7, 1984 because no more extensions would be granted.
At the December 7th hearing plaintiffs still had not received a firm commitment from either of the two sources they had revealed at their earlier appearance; however, they presented a *451 written offer of a loan by a mortgage company with an affidavit by a certified public accountant that a final commitment was imminent. No order was entered and the trial judge carried the matter to December 21st on which date he would hear the substantive issues unless a firm commitment had been obtained.
Two days prior to the adjourned hearing date plaintiffs obtained a financing commitment and on December 21, 1984 the trial judge entered an order enforcing the settlement reached by the parties June 29, 1984. He directed defendants "to consummate the sale of The Lambertville House ... [and] commence and complete the liquor license transfer process to plaintiffs." He also entered a stay pending appeal.
The next month, without notice to plaintiffs, defendant Allen advised the Alcoholic Beverage Control Commission that he had allowed plaintiffs for a number of years to be in control of the liquor license for the premises. As a result ABC charges were filed against him to which he pled guilty, but the liquor license was suspended with leave to
the licensee or any bona fide transferee of the license to apply to the Director by verified petition for the lifting of such suspension upon a showing that the present violative situation no longer exists.
Plaintiffs immediately filed an application seeking transfer of the license, but the ABC would not process the same in light of the pending appeal. Defendants, therefore, effectively caused the liquor business at the restaurant to be shut down, greatly reducing plaintiffs' income.
Also without notice to plaintiffs, defendants sought to have all of the utilities disconnected at The Lambertville House, but plaintiffs averted such curtailment of service. In the months that followed, a complaint was made against plaintiffs by the State for their failure to pay sales taxes for a portion of 1984. One of the plaintiffs was given a 90 day suspended jail sentence and $900 fine for this violation of the sales tax law. In addition, over the last few months plaintiffs have not made the semi-monthly payments of $2,800 to defendants as called for by *452 the original agreements. Although some of these facts arose since the order from which the appeal was taken, we granted one of two motions made by defendants permitting them to supplement the record so that we could have a better understanding of what had transpired between the entry of the Chancery order and oral argument.
Defendants' first claim that: "The Court Below Erred In Ordering Specific Performance Of An Agreement To Transfer A Liquor License." By the statement of this issue defendants point up the necessity to differentiate between an agreement to transfer a license and an agreement to consent to the transfer of a license. The latter type of agreement is best exemplified by the facts of the case before us where defendants were to use their best efforts and execute necessary documents to have the liquor license transferred, but the authority of the local Alcoholic Beverage Control Board to review the applicant and to approve or disapprove the transfer was never violated. In opposition to these facts are those in Rte. 73 Bowling Center, Inc. v. Aristone, 192 N.J. Super. 80, 83 (App.Div. 1983), where a liquor license was to be transferred in a situation where the consideration for the transfer had already been received by the transferor and the parties agreed to transfer the license itself. In the case before us the transfer was conditioned upon approval of the local ABC Board; in the Rte. 73 Bowling Center, Inc. case the obligation to transfer was absolute.
Power to make a determination as to which party should have the privilege of a liquor license resides solely in the municipal Alcoholic Beverage Control Board. A local board's discretion should not be impinged upon by the order of a court; but the court below did not order specific performance of a contract to transfer a liquor license. Denial of specific performance where contracts have provided for the outright transfer of a liquor license has been the rule when a local board has acted in a manner inconsistent with the agreement and denied the application. See Iavicoli v. DiMarco, 142 N.J. Eq. 699, 700 *453 (E. & A. 1948); Rawlins v. Trevethan, 139 N.J. Eq. 226, 229 (Ch.Div. 1947); McCluskey v. O'Brien, 137 N.J. Eq. 20, 23 (Ch. Div. 1945). The McCluskey court noted that a court "can lead the defendant to the committee, but cannot make him succeed." Courts must abstain from ordering the actual transfer of a license because they are unable "to direct the licensing authorities in the exercise of their discretionary duties." Takacs v. Horvath, 3 N.J. Super. 433, 438 (Ch.Div. 1949).
N.J.S.A. 33:1-26 provides, in pertinent part:
Under no circumstances ... shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except to the extent expressly provided by this chapter.
Specific performance, therefore, has also been denied where a third party has attempted to control a license by a pledge, lien, levy, attachment, execution, seizure for debts or the like.
The order entered by the trial judge does not contravene the legislative policies inherent in N.J.S.A. 33:1-26, but merely compels defendants to continue the liquor license transfer process which they voluntarily initiated by entering into the settlement agreement. The trial judge was puzzled by the statement of this court in Rte. 73 Bowling Center, Inc. that "N.J.S.A. 33:1-26 ... has been uniformly interpreted as prohibiting the remedy of specific performance based upon any contractual arrangement," 192 N.J. Super. at 84. This language should not be construed to limit contracts such as the one before this court which in no way impinge upon the discretion of the local ABC Board.
We note that the case of Novack v. Krauz, 138 N.J. Eq. 241 (Ch. 1946) holds to the contrary and specifically prohibits enforcement of a contract by a licensee to join in an application for a transfer of a liquor license by signing the necessary forms. Such a broad interpretation is erroneous and, insofar as the case stands for that proposition, it is overruled. The statutory purpose of according absolute discretion to the Alcoholic Beverage Control Commission or the local boards is not *454 thwarted by permitting parties to agree to cooperate in applying to a board for the transfer of a liquor license.
In this case, there was an apparent violation of the "control" provisions of the statute by permitting plaintiff to operate under the license for an extended period of time. The Board has taken such action as it deemed proper against the present licensee and has suspended the license until a proper transfer is made. We do not consider that aspect of this case as being before us. Since the object of the settlement agreement is to effect the sale of The Lambertville House and the transfer of the liquor license through proper channels, such object is legal and enforceable. Plaintiff has not sought the aid of the court to continue an illegal status. Cf. Nassef v. Cord, Inc., 90 N.J. Super. 135, 143 (App.Div.), aff'd 48 N.J. 317 (1966).
Defendants further claim that the settlement agreement was procured by fraudulent statements on the part of plaintiffs and defendants were thus entitled to rescind. We find, however, that even after reviewing the specific statements concerning taxes urged by defendants as a basis for a finding of fraud, such statements fall short of establishing either legal or equitable fraud. See Towpath Unity Tenants Ass'n v. Barba, 182 N.J.Super, 77, 83 (App.Div. 1981) as to legal fraud and Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981) as to equitable fraud. The statements by plaintiffs that they were responsible for the payment of taxes and that payments had been made or that arrangements would be made for the payment of taxes were not shown to have been misrepresentations. Also, if the closing occurs as contemplated by the settlement agreement, defendants will have suffered no damage.
Defendants lastly claim that the trial judge erred by revising the settlement agreement. They claim specifically that plaintiffs were relieved of the obligation to seek an SBA loan and permitted extended time to obtain a binding mortgage commitment. The agreement clearly shows, however, that *455 plaintiffs were given the option to seek an SBA loan or obtain conventional financing. With regard to conventional financing, the agreement provided:
In the event the SBA will not take a second mortgage or in the event the plaintiffs choose to obtain conventional financing ... then Mr. Allen will take a second mortgage.
The trial judge's finding that there was no obligation for plaintiffs to seek an SBA loan was quite properly based upon defendants' own agreement.
As to the extensions for "good cause shown," the trial judge's findings have been described earlier in this opinion. His determinations of good cause were well within his discretion. He did not revise the terms of the settlement agreement, he abided by them. Settlement of litigation rates high in our public policy, Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App.Div.), certif. den. 94 N.J. 600 (1983). The trial judge very properly attempted to aid the parties to carry out the terms of their settlement placed upon the record.
The orders appealed from are affirmed.