216 N.J. Super. 177 (1987)
523 A.2d 256
RENE R. BEAUDOIN, PLAINTIFF-APPELLANT,
v.
BELMAR TAVERN OWNERS ASSOCIATION AND JANE CLAYTON, MONMOUTH COUNTY CLERK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1987.
Decided March 24, 1987.
*179 Before Judges DREIER, SHEBELL and STERN.
William J. Pollinger argued the cause for appellant.
Jon Steiger argued the cause for respondent, Belmar Tavern Owners Association (Falvo, Bonello, Moriarty & Steiger, attorneys; Jon Steiger, of counsel and on the brief).
Richard T. O'Connor, attorney for Jane Clayton, Monmouth County Clerk, by letter advised Clerk takes no position with regard to merits.
John C. Manna argued the cause for amicus curiae, Board of Commissioners of the Borough of Belmar (Manna & Kreizman, attorneys; John Manna, on the brief).
Timothy M. Crammer argued the cause for amicus curiae, The Belmar Coalition, (Crammer & Covelli, attorneys; Timothy Crammer, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
This is the first interpretation by a New Jersey State appeals court of the "5 Year Rule" of N.J.S.A. 33:1-47.1. That statute directs the governing body to hold a referendum, when presented with the requisite petition from the qualified electors of the municipality, "on any proposed questions as to whether the hours between which the sale of alcoholic beverages at retail may be made in such municipality on weekdays, Sundays, either or both, shall be fixed as provided in such petition." The statute provides that after there has been a referendum "no *180 further referendum on the same question shall be held" for five years thereafter.
Plaintiff, Rene R. Beaudoin, a resident of the Borough of Belmar, appeals the Law Division's entry of summary judgment dismissing his complaint seeking to set aside a 1986 referendum question. He urges that the petition filed under the statute was insufficient and that the referendum scheduled pursuant to the petition was in violation of the statute's five year prohibition.
In September 1985 residents of the Borough of Belmar had petitioned their Board of Commissioners for a public referendum as to whether the closing hours for sale of alcoholic beverages should be rolled back on Sundays and weekdays from 2 a.m. as provided in existing municipal ordinances to 12 midnight. The Board accepted the petition and the residents of Belmar were presented with the two following questions in the November 1985 general election:
MUNICIPAL PUBLIC QUESTION NO. 1
"Shall the hours during which the sale of alcoholic beverages at retail for consumption on premises in the Borough of Belmar on weekdays, Monday through Saturday, be limited to those hours between 7:00 a.m. (commencement) and 12:00 midnight (cessation)?"
MUNICIPAL PUBLIC QUESTION NO. 2
"Shall the hours during which the sale of alcoholic beverages at retail for consumption on premises in the Borough of Belmar on Sunday be limited to those hours between 12:00 noon (commencement) and 12:00 midnight (cessation)?"
Both questions were approved by the voters at the general election.
On August 26, 1986 representatives of the defendant, Belmar Tavern Owners' Association, submitted new petitions to the Board of Commissioners seeking to expand the hours of sale from midnight until 2 a.m., as follows:

*181 MUNICIPAL PUBLIC QUESTION NO. 1
"Shall the hours during which the sale of alcoholic beverages at retail for consumption on premises in the Borough of Belmar on weekdays, Monday through Saturday, be limited to those hours between 7:00 a.m. (commencement) and 2:00 a.m. (cessation)?"
MUNICIPAL PUBLIC QUESTION NO. 2
"Shall the hours during which the sale of alcoholic beverages at retail for consumption on premises in the Borough of Belmar on Sunday be limited to those hours between 12:00 noon (commencement) and 2:00 a.m. (cessation)?"
The Board adopted a resolution which directed the questions to be placed on the ballot if doing so would not violate N.J.S.A. 33:1-47.1 and authorized the Borough attorney "to immediately proceed to the Superior Court ... for determination whether or not the two questions as presented have the right to be placed on the ballot or do they in fact violate the `5 Year Rule'."
Plaintiff on September 9, 1986 commenced this action in lieu of prerogative writ seeking to enjoin defendant, Jane Clayton, Monmouth County Clerk, from placing the question on the ballot. Following a hearing on September 16, 1986, the Law Division on its own motion, relying on Sea Girt Restaurant & Tavern Owners' Ass'n, Inc. v. Borough of Sea Girt, 625 F. Supp. 1482 (D.N.J.), aff'd mem. 802 F.2d 445 (3d Cir.1986) concluded:
... as a matter of law that the referendum questions propounded by the defendant association are not the same as those placed upon the November 1985 ballot and are thus not in contravention of the five year prohibition of N.J.S.A. 33:47.1.
Plaintiff further charged that the petitions contained insufficient valid signatures asserting that "to create a valid petition, the pool from which legally sufficient signatures may be obtained is limited to those persons who in fact cast ballots in the last general election." The trial court found on this issue that
the required number of signatures which would place this question on the ballot must be equivalent to fifteen per cent of the number of votes cast in the last preceding general election ... [which percent] may be drawn from all registered voters in the Borough of Belmar regardless of when they registered.
*182 On October 21, 1986 plaintiff filed a notice of appeal. Applications for emergent relief to the Appellate Division on October 21, 1986 and to the Supreme Court on October 29, 1986 were denied. The Belmar Coalition was granted leave to appear as amicus curiae by this court on October 23, 1986. The Board of Commissioners of Belmar was granted the same status by the Supreme Court on October 29, 1986.
On November 7, 1986, following the approval of both questions at the general election, plaintiff requested this court to enjoin the Monmouth County Clerk from certifying the election results and to accelerate this appeal. We denied injunctive relief but granted the acceleration.
Plaintiff argues that the phrase, "same question," refers to the general categories pertaining to the hours of sale of alcoholic beverages under § 47.1 and not the particular rendition of the question presented at the prior referendum. Both amici concur, pointing out that it is the substantive nature of the question that is controlling and that the subsequent referendum violates the statute.
The Tavern Owners Association contends that the questions in the two elections were not the same since the first referendum sought to reduce whereas the second sought to expand the hours of sale. It maintains that if the Legislature had intended plaintiff's interpretation, it would have used clearer language, e.g., prohibiting for five years further referenda "under this section" rather than "on the same question." It also asserts that election statutes are given a liberal construction, resolving doubt as to legislative intent in favor of electoral participation, and notes that plaintiff's interpretation might render this statute unconstitutional for disenfranchising voters. Plaintiff replies that the right of referendum is granted by statute, not Constitution, and that no issue of disenfranchisement exists.
The United States District Court for the District of New Jersey chose to construe the 5 Year Rule in Sea Girt Restaurant *183 & Tavern Owners' Ass'n, Inc. v. Borough of Sea Girt, supra. Plaintiffs there challenged a § 47.1 referendum reducing the hours of sale, claiming violations of due process, the commerce clause and the First Amendment freedom of assembly and that it unconstitutionally restricted their access to the ballot because it appeared to impose a five year prohibition on resubmission of any hours questions. 625 F. Supp. at 1484, 1494. Without independent statutory analysis, the court was "persuaded by the decision of the New Jersey Law Division in Young v. Byrne, 144 N.J. Super. 10, 364 A.2d 47 (Law Div. 1976)" which held in the context of N.J. Const. (1947) Art. IX, ¶ 7 that "same" meant "identical, not different or other." Therefore the District Court found it unnecessary to consider the First Amendment issue, holding that the "same question" language of § 47.1 prohibited only "identical questions" from being submitted to public referendum in the ensuing five years. Id. at 1494. The District Court failed to consider the questioned language in the context of the entire statutory scheme regulating the sale of alcoholic beverages; further, the Young opinion construed a provision of the New Jersey Constitution having no relationship to § 47.1.
N.J.S.A. 33:1-47.1 establishes the criteria and procedures for municipal referenda on the hours of retail sale of alcoholic beverages. The statute provides for bifurcation of hours of sale questions into weekday or Sunday categories by permitting "a referendum on any proposed questions as to whether the hours between which the sale of alcoholic beverages at retail may be made in such municipality on week days, Sundays, either or both...." N.J.S.A. 33:1-47.1 (emphasis added). The referendum procedure's 5 Year Rule holds in pertinent part that following such a referendum, "no further referendum on the same question shall be held therein prior to the general election to be held in such municipality in the fifth year thereafter...." N.J.S.A. 33:1-47.1 (emphasis added).
Section 47.1 is only one of a series of provisions in a single statutory scheme conferring the right of municipal referendum *184 on the sale of alcoholic beverages. See N.J.S.A. 33:1-44, 45, 46, 47 & 47.1. Each of these different provisions pertains to distinct sale conditions. See N.J.S.A. 33:1-44 (governing "a referendum on the question ...: `Shall the retail sale of alcoholic beverages other than brewed malt alcoholic beverages and naturally fermented wine, for consumption on the licensed premises by the glass or other open receptacle ... be permitted in this municipality?'"); N.J.S.A. 33:1-45 (governing "a referendum on the question ...: `Shall the retail sale of all kinds of alcoholic beverages, for consumption on the licensed premises by the glass or other open receptacle ... be permitted in this municipality?'"); N.J.S.A. 33:1-46 (governing "a referendum on the question ...: `Shall the sale of all alcoholic beverages at retail, except for consumption on railroad trains, airplanes and boats, and the issuance of any retail licenses, except as aforesaid, ... be permitted in this municipality?'"); N.J.S.A. 33:1-47 (governing "a referendum on the question ...: `Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?'"); N.J.S.A. 33:1-47.1 (governing "a referendum on any proposed questions as to whether the hours between which the sale of alcoholic beverages at retail may be made in such municipality on week days, Sundays, either or both...."). All these provisions uniformly include the 5 Year Rule.
In interpreting a statute, effect must be carefully given to the entire enactment:
[T]he internal sense of the law ... controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes in pari materia must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. Giles v. Gassert, 23 N.J. 22, 33-34 (1956). [Loboda v. Clark Tp., 40 N.J. 424, 435 (1963)].
See also O'Rourke v. Board of Review, 24 N.J. 607, 610 (1957) (statutory construction requires giving effect to the overriding legislative plan as fairly expressed in the statute's language). "The import of any word or phrase is to be gleaned from the *185 context and statutes in pari materia." State v. Brown, 22 N.J. 405, 415 (1956). "[A] word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary." Perez v. Pantasote, Inc., 95 N.J. 105, 116 (1984). See also In re Petition of Byron, 165 N.J. Super. 468, 472-473 (Law Div. 1978), aff'd 170 N.J. Super. 410 (App.Div.), certif. den. 82 N.J. 280 (1979). More specifically, the provisions of the Alcoholic Beverage Control Act, N.J.S.A. 33:1-1 et seq., are to be read in pari materia and are not to be construed to lead to absurd results. Seip v. Mayor of Frenchtown, 79 N.J. Super. 521, 523-524 (App.Div. 1963)
These principles compel the conclusion that the public questions on the 1986 ballot were the same as those on the 1985 ballot. The "same question" language in N.J.S.A. 33:1-44, 45, 46 and 47 relates to the specific public questions placed upon the ballot by virtue of the authority of each particular provision. The subject of § 47.1 is "any proposed question" pertaining to the regulation of the hours of sale of alcoholic beverages on weekdays or Sundays.
Our analysis is supported by the legislative history of § 47.1. As introduced on March 7, 1949, Assembly Bill No. 378 not only contained the newly proposed § 47.1, but was accompanied by an additional 5 Year Rule which was quite different from that later enacted. It read as follows:
6. Whenever a referendum shall have been had in any municipality pursuant to sections 33:1-44, 33:1-45, 33:1-46, 33:1-47 or 33:1-47.1 of the Revised Statutes, no referendum on any question contained in any other of said sections shall thereafter be held therein prior to the general election to be held in such municipality in the fifth year following such referendum. [A. 378, § 6 at 10 (introduced Mar. 7, 1949) (emphasis added)].
Then-Governor Alfred E. Driscoll returned the bill for reconsideration and noted his objection to § 6 as follows:
I am not in favor of the provisions of section 6 of the bill providing that where a referendum shall have been held under one of the five local option provisions of Title 33, no referendum shall be held until five years thereafter under any of the four other local option provisions. Such a provision might *186 have disastrous consequences for our licensees, where the citizens of a municipality, having adopted one referendum desire to reconsider, in part, within the five-year period, by the adoption of a referendum under perhaps another section of the bill. For example, in a municipality where a referendum was held at the last general election, under R.S. 33:1-47 ("Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?"), should a referendum be barred for five years under R.S. 33:1-47.1 ("Shall sales of alcoholic beverages be permitted during designated hours on Sundays?"). In my judgment, the prohibition is unwise and contrary to the spirit and general intent of our Alcoholic Beverage Law.
I have no objection to increasing from three to five years the prescribed interval between referenda in the municipality on the same public question. [Governor Alfred E. Driscoll's Veto Messages 1947-1953 at 131-132 (emphasis added)].
The Legislature satisfied the Governor's objection to the bill's blanket five year prohibition being applicable to all five provisions upon a referendum having been held under any one provision by limiting the application of the 5 Year Rule to subsequent questions proposed for referendum under the same provision of Title 33. Each provision thus contains its own separate 5 Year Rule, and therefore relative to § 47.1 such questions refer to the subject of hours of retail sale.
Therefore, it is not the wording of the question under § 47.1 which is critical; it is the subject matter of the question which is dispositive. Here, the public questions in each election address the same subject: hours of sale. We hold the second referendum was in contravention of the 5 year prohibition of § 47.1. To rule otherwise would be to allow grammatical nuances to control access to the ballot, potentially prompting annual referenda on questions distinguished only by minor linguistic variations despite their common subject.
An election may be voided only where it is clearly illegal. State ex rel. Love v. Board of Chosen Freeholders of Hudson County, 35 N.J.L. 269, 277 (Sup.Ct. 1871); In re Application of Wene, 26 N.J. Super. 363, 376 (Law Div.), aff'd 13 N.J. *187 185 (1953). An election will not be voided for failure to effectuate the directory requirements of election laws, which are those provisions designed merely for the information and guidance of election officers. Sharrock v. Borough of Keansburg, 15 N.J. Super. 11, 19-20 (App.Div. 1951) (such failure constitutes a harmless irregularity) (construing § 47.1); Wene, 26 N.J. Super. at 376-377; In re Smock, 5 N.J. Super. 495, 501 (Law Div. 1949). See generally 2A Sutherland Statutory Construction § 57.21 at 692 (Sands ed. 1984 & Supp. 1986).
In deciding whether a particular statutory provision is directory or mandatory, the court has the "duty to interpret a provision ... and to declare the consequences of non-compliance, if any, in the light of settled rules of statutory construction." Wene, 26 N.J. Super. at 376. Thus, on the one hand, "where the statute expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of the requirement, uniformly respect the legislative declaration." Sharrock, 15 N.J. Super. at 16-17. Where not so declared, "whether a statute is mandatory or not depends on whether `the thing directed to be done is of the essence of the thing required.'" Id. at 17 (quoting 2 Lewis' Sutherland on Statutory Construction § 610 (2d ed.)).
On the other hand, election regulations should be liberally construed so that
mere irregularities involving compliance with provisions of the election laws, although sufficient to challenge the right to vote at the polls, are not sufficient to set aside an election and thereby defeat the will of the electorate. [In re Petition of Hartnett, 163 N.J. Super. 257, 265 n. 3 (App.Div. 1978) (citing cases)].
See also Margate Tavern Owners' Ass'n v. Brown, 144 N.J. Super. 435, 441 (App.Div.) ("It is the duty and obligation of a court to promote the objectives of the people in securing a plebiscite upon a question so long as the demands of the law which authorize same can be complied with without an invasion *188 of any person's rights." (emphasis added)) (construing § 47.1), certif. den. 72 N.J. 455 (1976); Sharrock, 15 N.J. Super. at 18; In re Keogh-Dwyer, 106 N.J. Super. 567, 576 (Law Div.), aff'd 54 N.J. 523 (1969). In the case of § 47.1 where
there is no ... legislative declaration [specifying the irregularities nullifying such an election], the courts consider the nature of the irregularity, its materiality, the significance of its influence and consequential derivations in order to determine whether the digression or deviation from the prescribed statutory requisitions had in reasonable probability so imposing and so vital an influence on the election proceedings as to have repressed or contravened a full and free expression of the popular will, and thus deduce the legislative intent reasonably to be implied. [Sharrock, 15 N.J. Super. at 17].
Opinions of other jurisdictions have treated as mandatory those statutory provisions expressly or impliedly regulating the holding of subsequent referenda on the sale of alcohol. Cf. City of Albany v. Bond, 224 Ga. 712, 164 S.E.2d 813 (1968); Grubbs v. Rowland, 226 Ark. 874, 296 S.W.2d 201 (1956).
We conclude that the 5 Year Rule is a mandatory, not directory, requirement, the violation of which will invalidate the election. This violation had the result of overriding the lawful 1985 vote by the statutorily prohibited election in 1986. If this court were to uphold the election results, the voters in the earlier election would be denied their statutory right to have their vote binding for five years. The alleged disenfranchising of those who voted in the unlawful 1986 election is outweighed on balance by the need to protect the expression of the popular will in the lawful 1985 election.
In light of our holding we need not consider whether the trial court erred in its conclusion that the petition for the 1986 referendum conformed to the 15% Rule of N.J.S.A. 33:1-47.1.
We reverse the entry of summary judgment in favor of defendants and direct the entry of judgment in favor of the plaintiff. The Monmouth County Clerk and the Belmar Board of Commissioners are directed to take appropriate action forthwith to reinstate the mandate of the 1985 election.