B & G CORPORATION, PLAINTIFF-APPELLANT, v.
MUNICIPAL COUNCIL OF THE TOWNSHIP OF
WAYNE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 6, 1989—Reargued June 13, 1989.
Decided July 19, 1989.

Before Judges DREIER, HAVEY and BROCHIN.

*David S. Piltzer* argued the cause for appellant (*Piltzer & Piltzer*, attorneys; *David S. Piltzer* of counsel and on the briefs).

*John J. McKniff* argued the cause for respondent Municipal Council of the Township of Wayne (*Ronald A. Breslow*, attorney; *John J. McKniff* on the brief).

*Barbara L. Foglietta*, Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (*Peter N. Perretti, Jr.*, Attorney General of New Jersey, attorney; *Michael R. Clancy*, Assistant Attorney General, of counsel; *Barbara L. Foglietta* on the brief).

The opinion of the Court was delivered by

HAVEY, J.A.D.

Petitioner B & G Corporation (B & G) appeals from a determination by the Director, Division of Alcoholic Beverage Control, which affirmed the denial by the Municipal Council of the Township of Wayne of B & G's application to transfer a plenary

liquor license. B & G had obtained the right to consent to the transfer of the license as a result of a levy against the holder of the license, Jon Michaels, Inc. The Director determined that the levy was invalid under *N.J.S.A.* 33:1–26, which provides "[u]nder no circumstances ... shall a license, or rights thereunder, be deemed property, subject to ... levy, attachment, execution, [or] seizure for debts[.]" We agree, and now affirm.

Jon Michaels, Inc., trading as J & M Wine & Liquors, is the holder of a plenary retail distribution license issued by the Township of Wayne. In April 1985, Associated Buy Liquor Rite Merchants of New Jersey Inc. (Buy Liquor Rite) obtained a $41,626.08 judgment against Jon Michaels. In July 1986, Buy Liquor Rite obtained a writ of execution in the Law Division, directing the Passaic County Sheriff to satisfy the judgment "out of the personal property" of Jon Michaels.

On July 22, 1986, the sheriff levied upon Jon Michaels' right to consent to transfer its liquor license to another person. The sheriff thereupon sold this right at auction to Buy Liquor Rite for $100. In January 1987, the IRS filed with the Wayne Township Clerk a Notice of Seizure of said liquor license for $15,844.25 owed by Jon Michaels to the IRS. On September 10, 1987, Buy Liquor Rite assigned its interest in the right to consent to a transfer of the license to B & G.

On September 11, 1987, B & G filed with the Municipal Council a person-to-person license transfer application to effect a transfer of the license from Jon Michaels to B & G. Jon Michaels did not consent to the transfer. After a public hearing, the Council denied the application, concluding that the purported levy upon Jon Michaels' right to consent to a transfer is invalid under *N.J.S.A.* 33:1–26. The Council also determined that the IRS Notice of Seizure prevented the Council from effecting the proposed transfer, and further that Buy Liquor Rite had no authority to assign its interests in the license to B & G without the Council's prior approval.

B & G appealed the denial to the Director. The administrative law judge to whom the matter was assigned as a contested

case, concluded that the Council properly denied the application because B & G's application "did not bear the consent in writing of the licensee to such transfer" as mandated by *N.J.S.A.* 33:1–26. The Director adopted the findings of the ALJ, and determined that the consent to transfer was a "right" under the license, and thus not subject to levy under *N.J.S.A.* 33:1–26. The Director concluded that its determination rendered moot the question whether Buy Liquor Rite's assignment to B & G was valid. He also did not comment on the Council's finding that the IRS seizure precluded granting B & G's license transfer application.[1]

The question raised is whether the statutory proscription under *N.J.S.A.* 33:1–26 against any levy on a "license, or rights thereunder" includes a levy on a licensee's right to consent to a transfer of the license. B & G argues that only a levy against the license and the licensee's rights to possess and sell alcoholic beverages thereunder is prohibited by the statute. B & G views the right to consent to a transfer as a separate, defeasible property interest subject to levy, sale and execution. In support of its position, B & G cites *The Boss Co., Inc. v. Bd. of Com'rs of Atlantic City*, 40 *N.J.* 379, 387 (1963), which held that a liquor license in New Jersey constitutes "property" within the meaning and for the purposes of 26 *U.S.C.A.* (I.R.C. 1954) § 6321. B & G notes that in reaching that conclusion, *The Boss* observed that the liquor license has value, not merely because of the right to engage in the business of selling intoxicating liquors, "but also the monetary value that arises from the power possessed by the licensee to substitute, with the municipal consent, some other person in his place as licensee." 40 *N.J.* at 384.

We, of course, are not bound by the Director's determination that *N.J.S.A.* 33:1–26 prohibits levy upon a consent to transfer.

---

[1] In view of our affirmance of the Director's determination that a right to consent to a transfer is not subject to levy, we also do not address these issues.

*Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). However, we should accord substantial deference to an interpretation of a statute by the agency responsible for enforcing it. *Mortg. Bankers Ass'n v. N.J. Real Estate Com'n.,* 102 *N.J.* 176, 191 (1986); *Petition of Adamar of New Jersey,* 222 *N.J.Super.* 464, 469–470 (App.Div.1988). Further, we must defer to the administrative agency's expertise in relation to technical matters. *Id.* at 470.

Also, the primary factor in construing a statute is the underlying intent of the Legislature and, in discerning its intent, we must not only consider the particular statute in question, but also the entire legislative scheme of which it is a part. *State v. Wright,* 107 *N.J.* 488, 497 (1987). Moreover, the provisions of *N.J.S.A.* 33:1–1, *et seq.,* the Alcoholic Beverage Control Act, are not to be construed to lead to absurd results. *Beaudoin v. Belmar Tavern Owners Ass'n.,* 216 *N.J.Super.* 177, 185 (App. Div.), certif. den. 107 *N.J.* 626 (1987).

We agree with the Director that *N.J.S.A.* 33:1–26 prohibits levy on a licensee's right to consent to a transfer. Issuance of a liquor license "vests a *personal right* in the *licensee* to conduct a business otherwise illegal" and, as such, is "merely a temporary permit or privilege." *The Boss Co., supra,* 40 *N.J.* at 384 [emphasis added]. The statute guards this "personal right" by pronouncing that *"[u]nder no circumstances ... shall a license, or rights thereunder,* be deemed property, subject to ... levy, attachment, execution, [or] seizure for debts[.]" *N.J.S.A.* 33:1–26 [emphasis added]. The statute further provides that a license transfer application "shall bear the consent in writing *of the licensee* to such transfer[.]" [Emphasis added]. We read this pertinent language to mean that no transfer can be effected without the *voluntary* consent of the person who holds the "personal right" to the license, the licensee himself. The statutory language leaves no room for the conclusion that an "involuntary" consent by levy or otherwise will satisfy the application process.

Further, the evident intent of *N.J.S.A.* 33:1–26 in prohibiting levy or execution against the license "or rights thereunder" is to protect the licensee "from any device which would subject it to the control of persons other than the licensee[.]" *The Boss Co., supra*, 40 *N.J.* at 388. Thus, it is settled law that specific performance may not be granted to enforce the performance of a contract to assign or transfer a liquor license, or to otherwise control a licensee in the use of his license. *Rte. 73 Bowling Center, Inc. v. Aristone*, 192 *N.J.Super.* 80, 83–84 (App.Div. 1983); *Rawlins v. Trevethan*, 139 *N.J.Eq.* 226, 230–231 (Ch.Div. 1947). So too, it has been held that a pledge of a liquor license, or an agreement that one who purchases the licensee's chattels on distress or execution would have an option to buy the license, is invalid. *Walsh v. Bradley*, 121 *N.J.Eq.* 359, 360 (Ch.1937). The underlying reasoning behind these cases is that:

> [T]he local Alcoholic Beverage Control Board should have unfettered discretion as to whether to approve or deny a transfer without having *to consider possessory rights of a third party.* [*Rte. 73 Bowling Center, Inc. v. Aristone, supra*, 192 *N.J.Super.* at 83 [emphasis added]].

It is clear to us that under *N.J.S.A.* 33:1–26 a right to consent to a license transfer is a right inseparable from the license itself. The right to consent is created by and exists solely as a result of the issuance of the license, and hence is clearly a "right[ ] thereunder[.]" B & G's reading of the statute would frustrate the legislative will to protect the licensee "from any device which would subject it to the control of persons other than the licensee[.]" *The Boss Co., supra* 40 *N.J.* at 388. To separate the consent to transfer from the license itself would allow the involuntary sale and subsequent resale for profit of the consent while the original licensee carried on his liquor business. Such a result could subject the licensee to the influence and possible control of the licensed business by a stranger who "owned" the consent, since the stranger could threaten to exercise the right to consent which, if exercised, would put the licensee out of business. The Director properly underscored this point in his findings:

... while the issuing authority would know and have approved the record entity which is selling alcoholic beverages under the license, it would not know who possesses the right to transfer the license until an application to transfer is filed. These intervening entities would be beyond the jurisdiction and control of both the issuing authority and the Division of Alcoholic Beverage Control yet they would receive value for the consent to transfer and in essence would control who ultimately may apply for transfer of a license. This situation is totally unacceptable and would result in a situation where the State would have no idea who ultimately controls the license.

We agree with the Director that such a scheme would impinge upon the exclusive power of the local ABC Board and the Division to regulate licensees without interference by third parties.

*The Boss,* on which B & G relies, is not dispositive. *The Boss* held that a liquor license in New Jersey constitutes "property" *only* for the purposes of § 6321 of the Internal Revenue Code, and that *N.J.S.A.* 33:1–26 cannot immunize liquor licenses from the attachment of federal liens "as far as the federal government is concerned[.]" *Id.* at 387. We do not read *The Boss* as authority for bifurcating a consent to transfer from the license itself and levying upon the consent under State law. Indeed, *The Boss* cautions:

The liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been, even before our Legislature so declared by statute, *Voight v. Board of Excise Comm'rs,* 59 *N.J.L.* 358, 360–361 (Sup.Ct.1896), and *this consideration is to continue to govern the relationship between state and local government and the licensee. Likewise, the vitality of N.J.S.A. 33:1–26 is in no way diminished and will continue to protect the liquor license from any device which would subject it to the control of persons other than the licensee,* [citations omitted], *be it by* pledge, lien, *levy,* attachment, execution, seizure for debts or the like. [40 *N.J.* at 387–388, [emphasis added]].

*Darrah Food Services v. Lambertville House,* 202 *N.J.Super.* 447 (App.Div.), certif. den. 102 *N.J.* 329 (1985), on which B & G also relies, is likewise distinguishable. We held in *Darrah* that specific performance may be ordered to compel licensees to continue a liquor license transfer process which they had agreed to under a court settlement. *Id.* at 453. We there distinguished the case where the court is asked to order the actual transfer of a license, as in *Rte. 73 Bowling Center, Inc.*

*v. Aristone, supra,* 192 *N.J.Super.* at 84.   In *Darrah,* we reiterated that specific performance of an agreement to transfer a license contravenes the legislative policy inherent in *N.J.S.A.* 33:1–26, in that the licensing authority has exclusive discretion over the licensing process.   202 *N.J.Super.* at 452–453.   Unlike the present case, where the licensee has from the outset opposed the license transfer, *Darrah* involved a licensee who agreed to "use [its] best efforts and execute the necessary documents to have the liquor license transferred." *Id.* at 449. In other words, the licensee had voluntarily agreed to the license transfer process.   Here, the levy on the licensee's right to consent is anything but voluntary.

Also, *Darrah* did not involve the bifurcating of the right to consent from the license itself, and the potential wholesale trading for profit of that right, the result of which might place a stranger in a position to influence the operation of the licensed premises.   Indeed, citing *N.J.S.A.* 33:1–26, *Darrah* distinguished the case where specific performance is sought to compel a licensee, against his will, to consent to a transfer:

Specific performance, therefore, has also been denied where a third party has attempted to control a license by a pledge, lien, levy, attachment, execution, seizure for debts or the like. [202 *N.J.Super.* at 453].

The determination of the Director is affirmed.